# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 5, 2005 Session

## STATE OF TENNESSEE v. ANTHONY CROWE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for McNairy County**
**No. 1465A      Jon Kerry Blackwood, Judge**

---

**No. W2003-00800-SC-R11-CD -Filed June 23, 2005**

---

The defendant, Anthony Crowe, entered a plea of nolo contendere to facilitation of first degree murder and received an eighteen-year sentence. After imposition of the sentence, but before the judgment became final, the defendant filed a motion to withdraw his plea alleging that the plea was not supported by a factual basis and that the plea had not been voluntarily, knowingly, and understandingly entered. The trial court denied the defendant's motion, and the Court of Criminal Appeals affirmed. We granted permission to appeal to consider whether the trial court erred in denying the defendant's motion to withdraw. Although we conclude that Tennessee Rule of Criminal Procedure 11(f) does not mandate that a plea of nolo contendere be supported by a factual basis, we also conclude that the trial court erred in denying the defendant's motion to withdraw because the defendant established that his plea had not been voluntarily, knowingly, and understandingly entered. Thus, permitting withdrawal of the plea is necessary to correct manifest injustice. Tenn. R. Crim. P. 32(f). Accordingly, we reverse the judgment of the trial court and the judgment of the Court of Criminal Appeals, grant the defendant's motion to withdraw his plea, vacate the conviction of facilitation of first degree murder, and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Reversed; Case Remanded to the Trial Court**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Karen T. Fleet, Bolivar, Tennessee (at trial and on appeal); Pamela Dewey-Rodgers, Selmer, Tennessee (at trial), for the appellant, Anthony Crowe.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Rachel E. Willis, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Jerry W. Norwood, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## I. Procedural and Factual Background

On February 11, 2002, the McNairy County Grand Jury returned a single-count indictment charging the defendant, Anthony Crowe, and co-defendant Tommy Poe with first degree murder for the June 26, 2001, killing of Bobby Joe Smith. Plea negotiations ensued, and on June 24, 2002, the defendant entered a nolo contendere plea to facilitation of first degree murder,[1] and co-defendant Poe entered a guilty plea to second degree murder.

At the plea submission hearing, the prosecuting attorney summarized the State's proof. We quote from this summary at length as follows:

> Your Honor, if this case went to trial, among the State's proof would be that on or about June 26, 2001, that Mr. Crowe and Mr. Poe, along with another individual, Ruby Borden, went -- had been together that day. They all know each other[,] and they knew Bobby Joe Smith. On this particular day, Ms. Borden, they were all up at the house. So, she goes down to Mr. Smith's house. I think the proof would be that she went down there to attempt to get what I believe the testimony was weed or marijuana.
>
> I believe the proof would be that Mr. Poe and Mr. Crowe stayed down at another person's house waiting for her to return. By the time she got back down there -- I think Mr. Poe was her boyfriend -- and by the time she had gotten back down there, I believe the proof would be that [Mr. Poe] had gotten kind of upset because she hadn't gotten back in a time that he thought would be appropriate.
>
> After she had gotten back and told them she didn't bring any weed or anything, through some conversation among them and activity, the three of these people got in the car. Ms. Borden drove them back down to Mr. Smith's house, which wasn't all that far down there. When they got down there, I believe Ms. Borden's testimony would be that the three of them got out of the car, that Mr. Poe, when he got out, he had a ball bat.

---

[1] The judgment reflects that the defendant entered a guilty plea to facilitation of first degree murder, but the transcript of the plea submission hearing reflects that the defendant entered a plea of nolo contendere. Generally, when there is a conflict between the judgment of conviction and the transcript of the proceedings, the transcript controls. See State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985) (perm. app. denied March 3, 1986).

They went up to the door[.]  [S]he knocked or summoned Mr. Smith to the door.  When he opened the door, Mr. Poe hit him with this bat.  I believe the proof would be that as that was happening, then Ms. Borden jumps in the car and drives off up to another neighbor's house not too far away who they all knew.  I believe the proof would be that about this time, a call went in to 911 that there was a commotion going on over at Mr. Smith's house, and that call would have come from the next door neighbor who heard some racket and stuff over there.

As a result of that telephone call, the police went pretty quickly out to Mr. Smith's house, and this is around midnight. When the police had gotten out there -- there was different ones went different places -- when they got out there, they found Mr. Smith lying in the floor there just right inside the door, bruised and battered, and his throat had been cut severely and there was blood all over the floor there.

At some point, I think the neighbor or someone had [seen] that vehicle leave there, and they recognized that vehicle as being one that Ms. Borden and Mr. Poe rode in.  So, as a result of that information, the police were actually looking for Mr. Poe and [Ms. Borden] and I think they [were] having some conversation on the radio, which happened to be picked up on a scanner.  The proof would also be that before the police had gotten there, that Mr. Crowe and Mr. Poe had come up from out of the woods up there at the house where Ms. Borden was, and by that time the lady that lived there had come there.

There was a lot of screaming and crying and carrying on.  There was blood all over Mr. Poe.  I believe the proof would be that Mr. Poe made some statements up there acknowledging what had happened down there at the house, and that then their names were coming over the scanner.  Mr. Crowe's name wasn't mentioned in the radio report.

At some point [Mr. Crowe] leaves on foot.  Mr. Poe and Ms. Borden leave this house in the car . . . and go off down a field road in a pasture down there.  By the time the police get all of this information and everything, they go down and they find Mr. Poe and also Ms. Borden down there in this field or pasture or down the road there, so they're taken into custody.

I believe the proof would be that before they left while they were up there at the house, that Mr. Poe had requested and had been provided with some clothes, and that he had changed clothes and taken off the ones that had blood all over them.  I believe the proof would be that the police recovered the bloody clothes on that.  Some time later, Mr. Crowe had gone over to a house.

The police had gotten information about [Mr. Crowe's] whereabouts . . . [,]so he was taken into custody some hours after the initial event.  The State's proof with

-3-

regard to Mr. Crowe would be that at some point after he was taken into custody he gave a statement to the police, and I'm calling them police, but it's TBI and deputies and everything, but he gave a statement that basically . . ., he acknowledged that he went down there, and was down there when this happened.

I think in his statement he denies [having] any prior knowledge that there was going to be a homicide committed, that he basically -- I think what he said was there was a fight broke out down there, that he saw Mr. Poe with a knife, and with a hold of [sic] Mr. Smith, and he turned his head.

When he looked back, Mr. Smith's [lying] there with his throat cut. So, they -- and also in his statement he states that Mr. Poe had given him a billfold. He denied getting anything out of the billfold or carrying it away from the scene. I believe his testimony was he laid it on the table or on a stove or something there in the area.

This billfold was never found, or any other items out of the house were never found. So, the State would also call other witnesses that would also testify to any conversation they heard them make. There would also be some scientific evidence that would be presented that would substantiate some of the State's theory with regard to some of the things that happened.

And with regard to this, the State has agreed that as Your Honor has stated, that only a jury can determine what the facts are after they've been presented from the witness stand. So, naturally we don't know what the jury is going to do, but taking all this into consideration, the State has made this proposal, and they're willing to enter into the plea as agreed.

The only piece of evidence that I would introduce as an exhibit would be a copy of the front page of the autopsy report where Mr. Smith was taken to the medical examiner's office. The autopsy was performed, and the cause of death was multiple injuries including blunt force trauma to the head and incised wounds to the neck, which caused injuries to the vital organs and major blood vessels causing bleeding and death. If I could just mark that as an exhibit, that will conclude the State's proof.

When the court asked the defendant's counsel "do you stipulate those are the facts," counsel responded, "Yes, sir. That is substantially what Mr. Crowe's position is."[2] The trial court then jointly questioned the defendant and Poe under oath. In response to questioning, the defendant, a twenty-eight-year-old high school graduate, indicated that he understood his rights, that he had

---

[2]In response to the same question from the trial court, Poe's attorney explained in detail how Poe's view of the proof differed from the State's recitation and why Poe had decided that pleading guilty was in his best interest.

-4-

discussed the case and his possible defenses with his attorney, and that he was satisfied with the legal representation that his attorney had provided. The trial judge informed the defendant of the fifteen-to-twenty-five-year sentencing range for facilitation of first degree murder and advised the defendant that he would be eligible to seek parole after serving thirty percent "of whatever sentence the Court imposes." However, the trial court did not discuss with the defendant the nature and elements of facilitation of first degree murder. When the trial court asked the defendant whether by his plea he was "stipulating" to "a factual basis for these convictions as recited by the Assistant District Attorney," the defendant responded, "Yes, sir." The defendant then entered his plea of nolo contendere to facilitation to commit first degree murder.

The presentence report, which was prepared and made a part of the record of the defendant's July 25, 2002, sentencing hearing, noted that the defendant had no prior convictions. Although the defendant told the presentence investigator that he had been arrested for public intoxication at age eighteen or nineteen, the investigator found no record of the arrest. The defendant further reported that he had undergone alcohol abuse treatment. As a result of his abuse of alcohol, the defendant had been separated from his wife and two daughters at the time of his offense. The defendant, a graduate of McNairy County High School, had a valid driver's license and had maintained steady employment as a laborer.

Also included in the presentence report was the defendant's lengthy handwritten statement concerning the events of June 26, 2001. In the statement, the defendant recounted that Poe and Borden had picked him up at the house where he had been staying, and the trio had driven around drinking beer. They arrived at a friend's house by 10:00 p.m., where Poe and the defendant remained while Borden went to the victim's house to get marijuana. When Borden returned an hour later, Poe asked why she had been gone so long. When Borden replied that the victim had tried to rape her, Poe declared that he was going to "whoop" the victim. Borden then drove Poe and the defendant to the victim's house. The defendant wrote that Poe got out of the car carrying a baseball bat, and Poe and Borden went to the front door, while the defendant stood "back at a distance in Mr. Smith's yard." Borden knocked, and when the victim opened the door, Poe hit the victim with the bat. Borden ran "back up the hill," but Poe entered the house and continued hitting the victim. The defendant recalled in his written statement:

> While [Poe] was inside hitting Mr. Smith I was still outside. I went in to see what was happening. I went in and [Poe] was beating Mr. Smith. I panic[k]ed. I was scared so I turned around and [Poe] hit him a few more times and the bat broke. [Poe] ran in the kitchen and got a knife and grabbed Mr. Smith by the hair and said "f--- with my old lady" and I ran for the door and I got to the side door [and] turned around to make sure he wasn't coming after me and he was over Mr. Smith and Mr. Smith was on the floor in a puddle of blood. I ran out back in the woods. . . .

Poe caught up to the defendant after the defendant fell and hurt his ankle. They arrived together at the house where Borden had fled, and upon their arrival, Poe told Borden that "he [had] cut Mr. Smith from ear to ear." When the defendant heard on a "scanner" that the police were "looking for

Tommy Poe and a blond-headed woman," he left and again "ran through the woods." Around 4:00 or 4:30 a.m., the defendant telephoned his wife, who picked up the defendant and drove him back to the house where he had been staying. A short time later, officers arrived and arrested the defendant. In his statement, the defendant maintained:

> I did not think [Poe] was going to do nothing [sic] to Mr. Smith when he got out the ball bat because I seen him pull that same bat out on Jerry King about 2 days before this happened. He did that because he found Ruby in Jerry King's bed naked. He didn't do anything then so I didn't think he was going to do anything to Mr. Smith. The only thing I done [sic] to hurt Mr. Smith was I didn't help him. I want the family of Mr. Smith to know this. I panic[k]ed. I got scared and I ran. I had nothing to do with beating or cutting Mr. Smith['s] throat. I am truly sorry for your loss but I had nothing to do with it.

> The presentence report also set out the following handwritten statement by Poe:
> I do not feel I'm guilty of 1th or 2th [sic] d[e]gree murder, I did kill him but I feel it was manslaughter, my girlfriend told me he tr[i]ed to rape her, but no one would tell the truth, so I took it so I can tell the truth about what happened.

At the sentencing hearing, the victim's niece testified, stating that the defendant "got into this without knowing at the time what he was getting into" and that he "got in with the wrong bunch of people." The McNairy County Sheriff testified that he "[didn't] know of any problems [the defendant had] created" since being in custody. The defendant's wife also testified and confirmed that she and the defendant had been living apart at the time of the offense because the defendant had been abusing alcohol. The defendant had continued seeing his wife and his daughters during that time. However, Mrs. Crowe stated that, even when the defendant drank, "[t]here was no violence, nothing" and that the defendant never "bothered" or "harmed" anyone. After his arrest, the defendant told Mrs. Crowe "that he did not do it, that he saw what had happened, and he took off running because he was scared something would happen to him." The defendant's father testified that the defendant had never been a violent person and that the defendant "would get mad and walk away before he would hurt someone."

The trial court imposed an eighteen-year sentence, finding no enhancement factors and one mitigating factor—that the defendant had admitted guilt. The trial court noted that the defendant would be required to serve thirty percent of the sentence before becoming eligible for parole.

After imposition of sentence, but before the judgment became final, the defendant hired new counsel and filed a motion to withdraw his nolo contendere plea. In an affidavit supporting the motion, the defendant denied complicity in the victim's murder, alleged that the prosecution had not established an adequate factual basis for the plea, and maintained that his plea had not been voluntarily, knowingly, and understandingly entered because he had not understood the definition of facilitation when he entered the plea. The defendant asserted that he had entered the plea believing it meant that he had been "present at the crime scene and witnessed the murder."

-6-

According to the defendant, only after he entered the plea did he discover that facilitation is defined by statute to mean:

> A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

See Tenn. Code Ann. § 39-11-403 (1997). Upon learning of this definition, the defendant sought advice from another attorney, his present counsel, and through counsel, filed a motion to withdraw his plea, because he had not "furnish[ed] any assistance in the commission of the felony" and "no evidence was ever presented at the preliminary hearing or thereafter that [he] committed any act in furtherance of the commission of said felony." The defendant alleged that "under all the facts and circumstances" permitting withdrawal of his plea was necessary to correct manifest injustice. The defendant pointed out that he had no prior criminal record, that he had cooperated with law enforcement authorities, that Poe had admitted to murdering the victim, and that neither Poe nor Borden nor any other evidence had implicated him in the victim's murder.

At the hearing on his motion to withdraw, the defendant testified that when he entered the plea he had not realized that facilitation meant that "you had something to do with it." The defendant reiterated that he would not have agreed to the plea had he known and understood the definition and nature of facilitation. The defendant testified that he and his family had told his former attorney that he would enter a plea to facilitation only "if it meant I didn't have nothing [sic] to do with the murder of Mr. Smith."

When asked on cross-examination why he had told the trial court at the plea submission hearing that he had been satisfied with the legal representation his previous attorney had provided, the defendant responded that he had not understood what he "was pleading to back then." After discovering that facilitation "means that I had something to do with it," he filed the motion to withdraw because "I had nothing to do with this. I was there. I admit it. But that's all. I was just there." The defendant testified:

> I didn't know . . . facilitation . . . meant that you had something to do with it, because, see if I'd knowed [sic] it, I wouldn't have pled to it, because I didn't have nothing [sic] to do with the death of Mr. Smith. I was there and I seen [sic] it and I've told—I've been truthful with the police since day one. And, I mean, you know, I was there and I seen [sic] something I shouldn't have seen, and maybe I should have called the law, but when I got to a phone to where I could have called the law, [Poe], he was right there with me, and I mean, you know, after he just killed a man, I'm not going to sit there and pick up a phone and, you know, call the law, you know, with him standing right there with me.
>
> . . . .
>
> See, I am guilty of being there and seeing it, you know, and I thought that's what I was pleading guilty to. And if that's what the time carries just for me being there and

-7-

seeing it is, you know, then I'm ready to do it. But I didn't have anything to do with the death of Mr. Smith.

On cross-examination, the defendant admitted that he had known when he entered the plea that he could have received much harsher punishment had he been tried and convicted of first degree murder. The defendant also admitted that he had known his choice was to plead not guilty and to stand trial for first degree murder or to plead nolo contendere to facilitation of first degree murder. The defendant insisted, however, that he had not understood the legal concept of facilitation, pointing out that he had never previously been convicted of a criminal offense and stating, "I was ignorant to [sic] the law." The defendant maintained therefore that his plea had not been voluntarily, knowingly, and understandingly entered and that permitting withdrawal of his plea was necessary to correct manifest injustice.

The trial court denied the defendant's motion, finding that the defendant had failed to demonstrate manifest injustice. In a split decision, the Court of Criminal Appeals affirmed the trial court's judgment, concluding that the trial court had not erred in determining that the defendant's allegations of an involuntary and unknowing plea were not credible and that the trial court had not erred in finding that there was a sufficient factual basis for the defendant's plea. Judge Curwood Witt dissented from the majority decision, reasoning that "a sufficient factual basis for the defendant's plea is lacking and that the plea was the result of a mistaken belief regarding criminal liability, such that manifest injustice permits the plea to be withdrawn." We granted the defendant's application for permission to appeal, and for the reasons explained herein, we reverse the judgments of the trial court and Court of Criminal Appeals.

## II. **Standard of Review**

A defendant does not have a unilateral right to withdraw a plea. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003); State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995); State v. Anderson, 645 S.W.2d 251, 253-54 (Tenn. Crim. App. 1982). Whether a defendant should be permitted to withdraw a plea is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed. Mellon, 118 S.W.3d at 345; Henning v. State, 201 S.W.2d 669, 671 (Tenn. 1947); Turner, 919 S.W.2d at 355; see generally 21 Am. Jur. 2d Criminal Law, § 755 (May 2004). The trial judge "should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." Henning, 201 S.W.2d at 671. "[W]hen a constitutional violation is shown, the trial court's discretion is 'strictly curtailed.'" Mellon, 118 S.W.3d at 346 (quoting State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991)). The trial court's decision "will not be reversed unless it clearly appears that there was an abuse of discretion." Henning, 201 S.W.2d at 671. An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion. Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).

### III. **Standards Governing Withdrawal of Guilty Plea**

Tennessee Rule of Criminal Procedure 32(f) ("Rule 32(f)") provides a pre-sentencing and a post-sentencing standard for evaluating motions to withdraw.

> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; *but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.*

Rule 32(f) (emphasis added). The more demanding standard, "to correct manifest injustice," applies to motions, like the defendant's motion, which are filed after imposition of sentence.[3] This standard is based "upon practical considerations important to the proper administration of justice." Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963).

> Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process.

Id. (footnote omitted); see also State v. Evans, 454 S.E.2d 468, 473 (Ga. 1995) (noting that finality considerations require a more demanding standard for post-sentencing withdrawal); State v. Johnson, 864 A.2d 400, 403 (N.J. 2005) (describing manifest injustice as a discretionary determination in which finality considerations are weighed against fairness considerations). Although Rule 32(f) does not define "manifest injustice,"[4] courts have identified on a case-

---

[3]The Tennessee Rules of Criminal Procedure were adopted April 14, 1978, and became effective July 3, 1978. See Tenn. R. Crim. P. 59 and Advisory Commission Comments. The Tennessee Rules were patterned after the Federal Rules of Criminal Procedure. See Advisory Commission Comments [1984] to Tenn. R. Crim. P. 1. However, the Federal Rules of Criminal Procedure have not employed the "to correct manifest injustice" standard since 1983 when the federal rules were amended to disallow motions to withdraw filed after imposition of sentence and to require defendants to seek relief from a plea after imposition of sentence on direct appeal or on habeas corpus review. See United States v. Ruiz, 257 F.3d 1030, 1032 (9th Cir. en banc 2001) (discussing the history of the rule). Federal Rule of Criminal Procedure 11(d), which currently governs motions to withdraw, provides:

A defendant may withdraw a plea of guilty or nolo contendere:
(1) before the court accepts the plea, for any reason or no reason; or
(2) after the court accepts the plea, but before it imposes sentence if:
    (A) the court rejects a plea agreement under Rule 11(c)(5); or
    (B) the defendant can show a fair and just reason for requesting the withdrawal.

[4]"Manifest injustice" was also not defined by the pre-1983 Federal Rules of Criminal Procedure. Although Uniform Rule of Criminal Procedure 444(g)(2) utilizes the "to correct manifest injustice" standard, the rule does not

(continued...)

by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea.[5]  See Turner, 919 S.W.2d at 355; Evans, 454 S.E.2d at 473.  Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily";[6] (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea;[7] (3) the plea was not knowingly, voluntarily, and

---

[4](...continued)

define the term "manifest injustice."  Instead, Rule 444(g)(2) describes the grounds which constitute manifest injustice, providing as follows:

> Withdrawal is necessary to correct a manifest injustice if the defendant proves, among other grounds, that:
> (i) the plea was accepted without substantial compliance with subdivision (c) [procedures a trial court must follow to ensure the defendant understands the plea]
> (ii) the plea was involuntary or was entered without knowledge of the nature and elements of the crime to which the plea was offered or that the sentence actually could be imposed;
> (iii) the plea resulted from the denial to the defendant of effective assistance of counsel guaranteed by constitution, statute, or rule;
> (iv) the plea was not entered or ratified by the defendant, if the defendant is an individual, or was not ratified by a person authorized to so act in the defendant's behalf, if the defendant is a person other than an individual; or
> (v) the sentence exceeds that specified in the plea agreement and:
> > (A) the prosecuting attorney failed to make or to refrain from opposing specified recommendations as promised in the plea agreement;
> > (B) the plea agreement was either tentatively or fully concurred in by the court, and the defendant did not affirm the plea after being informed that the court no longer concurred and after being called upon to affirm or withdraw the plea; or
> > (C) the plea was entered upon the express condition, approved by the court, that the plea could be withdrawn if the sentence exceeded that specified in the plea agreement.

Uniform Rules of Criminal Procedure, Rule 444(g)(2), 10 U.L.A. 123-24 (1987).

[5]Many of the Tennessee case-by-case determinations predate the 1978 adoption of the Rules of Criminal Procedure, but the principles formulated in these pre-Rules cases remain sound and have been applied in cases decided under the manifest injustice standard, both in Tennessee and elsewhere.  See generally 21 Am. Jur. 2d Criminal Law, § 755 (2004) ("Circumstances that constitute manifest injustice permitting the withdrawal of the plea include pleas entered: (1) involuntarily, (2) without effective assistance of counsel, (3) without an understanding of the nature of the charges, (4) after a court's failure to establish a sufficient factual basis for the plea, (5) pursuant to a plea agreement that was not kept by the prosecution, or (6) as a result of procedural errors by the court.").

[6]Henning, 201 S.W.2d at 670; see also Capri Adult Cinema v. State, 537 S.W.2d 896, 898 (Tenn. 1976); Swang v. State, 42 Tenn. (2 Cold.) 212, 213-15 (1865); Anderson, 645 S.W.2d at 254 ("A plea of guilty entered into by one fully aware of the direct consequences, must stand *unless* induced by threat, misrepresentation, or some other inducement which by its nature is improper as having no proper relationship to the prosecutor's business.") (emphasis added).

[7] See Davis, 823 S.W.2d at 220.

understandingly entered;[8] and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.[9] Although manifest injustice may exist in the absence of a constitutional violation, we agree with the Court of Criminal Appeals that "[w]here there is a denial of due process, there is a 'manifest injustice' as a matter of law." Davis, 823 S.W.2d at 220 (quoting United States v. Crusco, 536 F.2d 21, 26 (3d Cir. 1976)).[10] In contrast, a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal. Turner, 919 S.W.2d at 355 (citing Capri Adult Cinema, 537 S.W.2d at 898); Ray v. State, 451 S.W.2d 854, 856 (Tenn. 1970); Henning, 201 S.W.2d at 671).

## IV.  Grounds for Withdrawal

### A. Lack of a Factual Basis

With these principles in mind, we now consider whether the trial court erred in concluding that the defendant failed to establish that withdrawal of his plea was necessary to correct manifest injustice. The defendant contends that withdrawal is appropriate because his nolo contendere plea was not supported by a sufficient factual basis. As grounds for this assertion, the defendant relies upon Tennessee Rule of Criminal Procedure 11(f), which provides:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

In response, the State argues that the plea was supported by a sufficient factual basis. Alternatively, the State contends that a factual basis need not be established when a defendant enters a nolo contendere plea rather than a guilty plea. The State points out that Rule 11(f) refers only to "acceptance of a plea of guilty" and does not mention acceptance of a plea of nolo contendere. The

---

[8]Turner, 919 S.W.2d at 355; see also 21 Am. Jur. 2d Criminal Law, § 755 n.99 (May 2004) (listing involuntariness as a basis for withdrawal under the manifest injustice standard and citing cases from other jurisdictions which have so held).

[9]Evans, 454 S.E.2d at 473 ("We do not undertake to exhaustively define manifest injustice in this opinion, as the test will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges."); State v. Conrad, E2001-02799-CCA-R3-CD, *4, 2003 WL 21106264 (Tenn. Crim. App. May 15, 2003); see also 21 Am. Jur. 2d Criminal Law, § 755 n.1 (May 2004) (listing ineffective assistance of counsel as a basis for withdrawal under the manifest injustice standard and citing cases from other jurisdictions which have so held).

[10]Federal courts have recognized that the "to correct manifest injustice" standard affords trial courts greater latitude to allow withdrawal than would be afforded if withdrawal were permitted only for constitutional violations. See United States v. Washington, 341 F.2d 227, 281 n.3 (3d Cir. 1965); Pilkington v. United States, 315 F.2d 204, 209 (4th Cir. 1963) ("The facts disclosed in a hearing might not be sufficient for the court to conclude that the guilty plea was involuntary and violative of due process, yet the court may be of the opinion that clear injustice was done.")

application of the factual basis requirement to nolo contendere pleas is an issue of first impression in Tennessee.[11]  We conclude that the State is correct in its assertion that Rule 11(f) does not mandate the establishment of a factual basis for nolo contendere pleas.

Although nolo contendere pleas were part of the common law in England and have always been permitted in federal courts,[12] such pleas first became available in Tennessee in 1978 with the adoption of the Rules of Criminal Procedure.  See Tenn. Advisory Commission Comments, Tenn. R. Crim. P. 11 ("Rule 11 establishes for the first time in Tennessee practice the availability of a plea of nolo contendere . . . .").  Our analysis begins therefore with Tennessee Rule of Criminal Procedure 11 ("Rule 11").  In Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tennessee, 104 S.W.3d 465, 469 (Tenn. 2003), we held that the "well-established and well-known rules of construction" which courts apply when interpreting statutes enacted by legislative bodies also apply when courts interpret rules of procedure.  Thus, in determining whether the factual basis requirement applies to nolo contendere pleas, we must afford to Rule 11 an interpretation which does not unduly restrict or expand its coverage beyond its intended scope.  Id. (citing State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); State v. Butler, 980 S.W.2d 359, 362 (Tenn. 1998)).  We apply the natural and ordinary meaning of the language as it is used in the context and construe together all sections of the rule in light of its general purpose and plan.  Doe, 104 S.W.3d at 469 (citing State v. Netto, 486 S.W.2d 725, 729 (Tenn. 1972)).

Rule 11 consists of seven subsections, enumerated alphabetically (a) through (g).  Rule 11(a), the general prefatory subsection, lists the three plea options available to criminal defendants—"[a] defendant may plead not guilty, guilty, or nolo contendere."  Rule 11(b) is limited in scope to nolo contendere pleas and directs that a defendant may enter such a plea "only with the consent of the court."  Rule 11(b) further explains that "[s]uch a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."  Rule 11(c) and (d) apply to both guilty pleas and nolo contendere pleas.  Rule 11(c)[13]

---

[11]Although prior Tennessee decisions have discussed the factual basis requirement as if it applies to nolo contendere pleas, the State did not contest its application in these prior cases.  See, e.g., Sexton v. State, 151 S.W.3d 525, 532 (Tenn. Crim. App. 2004) (perm. app. denied Nov. 8, 2004); State v. Duffey, No. 01C01-9610-CC-00427, *3, 1998 WL 28054 (Tenn. Crim. App. Jan. 27, 1998).  Thus, the issue has not been squarely presented in any prior case.

[12] See Hudson v. United States, 272 U.S. 451, 453 (1926); 1A Charles Alan Wright, 1A Federal Practice and Procedure, § 177, at 284-85 (3rd ed. 1999).

[13]Rule 11(c) provides:
> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
> (2) If the defendant is not represented by an attorney, that he or she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one

(continued...)

-12-

is designed to ensure that a defendant's plea is entered with knowledge and understanding of its consequences, while Rule 11(d)[14] is designed to ensure that a plea is voluntarily entered. Rule 11(e), which also applies to both guilty and nolo contendere pleas, prescribes the procedure for plea negotiations, for disclosing the agreement to the court, and for advising the defendant of the trial court's authority pertaining to the plea agreement. Subsection (e) also describes the evidentiary parameters which apply to pleas, offers of pleas, and related statements.[15] Subsection (g), which

---

[13](...continued)
>will be appointed; and
>(3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right against compelled self-incrimination; and
>(4) That if the defendant pleads guilty or nolo contendere there will not be a further trial of any kind except as to sentence so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
>(5) That if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded, and if the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or false statement.

[14]Rule 11(d) provides:
>The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

[15]Rule 11(e) provides:
>(1) In General.— The district attorney general and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the district attorney general will do any of the following:
>>(A) Move for dismissal of other charges; or
>>(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
>>(C) Agree that a specific sentence is the appropriate disposition of the case.
>The court shall not participate in any such discussions.
>(2) Notice of Such Agreement.— If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement pursuant to subdivision (e)(4), or may

(continued...)

directs that a verbatim record be made of the proceedings at which a plea is entered, also expressly applies to the entry of guilty pleas and nolo contendere pleas.[16] In contrast, subsection (f), upon which the defendant relies, expressly applies only to "the acceptance of a plea of *guilty*." Tenn. R. Crim. P. 11(f) (emphasis added). The fact that subsection (f) is the only provision of Rule 11 which does not expressly refer to nolo contendere pleas logically leads to our conclusion that Rule 11(f) does not apply to nolo contendere pleas.

Our conclusion is also supported by the Advisory Committee Comments to Federal Rule of Criminal Procedure 11 and by federal decisions interpreting the federal rule. As previously stated, the Tennessee Rules of Criminal Procedure, and in particular, the nolo contendere plea, derived from

---

[15](...continued)

defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

(3) Acceptance of the Plea Agreement.—If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if he or she persists in the guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Time of Plea Agreement Procedure.—Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

(6) Inadmissibility of Pleas, Offers of Pleas, and Related Statements.— Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

[16]Rule 11(g) provides:

Record of Proceedings.— A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

the Federal Rules of Criminal Procedure and from federal practice. In construing Rule 11, it is thus appropriate to look to federal authorities, particularly in light of the Advisory Commission Comment to Rule 11 which recognizes that "uniformity . . . with the federal courts in procedural matters such as those contemplated under Rule[] 11 . . . is beneficial to the public and to the legal profession."

The 1966 Advisory Committee Notes to Federal Rule of Criminal Procedure 11 state in relevant part:

> For a variety of reasons it is desirable in some cases to permit entry of judgment upon a plea of *nolo contendere* without inquiry into the factual basis for the plea. The new third sentence [the factual basis requirement] is not, therefore, made applicable to pleas of nolo contendere.

Fed. R. Crim. P. 11, Notes of the Advisory Committee on the Rules, 1966 Amendment. In a subsequent decision, the United States Supreme Court confirmed the inapplicability of the factual basis requirement to nolo contendere pleas, stating:

> Throughout its history . . . the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed. Rule Crim. Proc. 11 preserves this distinction in its requirement that a court cannot accept a guilty plea "unless it is satisfied that there is a factual basis for the plea"; *there is no similar requirement for pleas of nolo contendere, since it was thought desirable to permit defendants to plead nolo without making any inquiry into their actual guilt.* See Notes of Advisory Committee to Rule 11.

North Carolina v. Alford, 400 U.S. 25, 35-36 n.8 (1970) (emphasis added). Other state and federal courts, interpreting either Federal Rule of Criminal Procedure 11 or a state rule patterned upon Federal Rule of Criminal Procedure 11 have also concluded that the factual basis requirement does not apply to nolo contendere pleas.[17]

---

[17] See, e.g. Blohm v. Comm'r, 994 F.2d 1542, 1554 (11th Cir. 1993) (stating that guilty pleas must be rooted in fact before they may be accepted and emphasizing that no similar requirement exists for pleas of nolo contendere); United States v. Prince, 533 F.2d 205, 208 (5th Cir. 1976) ("Rule 11 does not require that the district court find a factual basis for a plea of nolo contendere, as opposed to a plea of guilty."); Cortese v. Black, 838 F. Supp. 485, 492 (D. Colo. 1993) ("Courts may accept a plea of nolo contendere without inquiring into actual guilt."); United States v. Wolfson, 52 F.R.D 170, 174-76 (D. Del. 1971), *aff'd memo*, 474 F.2d 1340 (3d Cir. 1973) ("If the plea is 'guilty,' the Court must be satisfied that there is a factual basis for that plea, but if the plea is '*nolo contendere*' no such duty is imposed upon the Court."); State v. Godek, 438 A.2d 114, 119-20 (Conn. 1980) (holding that Connecticut's version of Rule 11 does not require a factual basis for a nolo contendere plea); State v. Merino, 915 P.2d 672, 689-93 (Haw. 1996) (holding that Hawaii's version of Rule 11 does not require a factual basis for a nolo contendere plea); Johnson v. Mullen 390 A.2d 909, 912 (R.I. 1978) (holding that the prior version of Rhode Island's Rule 11, applicable when the petitioner entered his plea, had not required a factual basis for a nolo contendere plea, but noting that the rule had been amended, effective September 1, 1972, to require a factual basis for both guilty pleas and nolo contendere pleas).

Applying the rules of construction, and considering the plain language of Rule 11(f), the Advisory Committee Notes to Federal Rule of Criminal Procedure 11, and decisions from other jurisdictions considering this issue, we hold that Rule 11(f) does not mandate the establishment of a factual basis before a trial court may accept a nolo contendere plea. Thus, the trial court did not abuse its discretion by refusing to grant the defendant's motion to withdraw on the ground that the plea lacked a factual basis.[18]

### B. The Plea was not Voluntarily, Knowingly, and Understandingly Entered

Our holding that Rule 11(f) does not require a factual basis in no way lessens the importance of the requirement that a nolo contendere plea be voluntarily, knowingly, and understandingly entered. See Teague v. State, 772 S.W.2d 932, 943-44 (Tenn. Crim. App. 1988) (perm. app. denied June 5, 1989) (holding that a nolo contendere plea must be entered in accordance with Boykin v. Alabama, 395 U.S. 238 (1969) and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), and setting aside Teague's nolo contendere plea because it was not voluntarily and knowingly entered). While a defendant who is permitted to plead nolo contendere does not expressly admit his guilt,[19] such a defendant effectively consents to being punished as if he were guilty. Alford, 400 U.S. at 35-36 n.8; State v. Teague, 680 S.W.2d 785, 789 (Tenn. 1984) (holding that a nolo contendere plea has the same effect as a guilty plea, absent some statute or rule to the contrary); Teague v. State, 772 S.W.2d at 943 (stating that entry of a nolo contendere plea is tantamount to an admission of guilt for

---

[18]Although we conclude that Rule 11(f) does not *require* the establishment of a factual basis for a nolo contendere plea, we point out that Rule 11(f) also does not *prohibit* a trial judge, in his or her discretion, from insisting that a factual basis be established before accepting such a plea. Indeed, Rule 11(b) expressly provides that nolo contendere pleas "shall be accepted by the court *only after* due consideration of the views of the parties and the interest of the public in the effective administration of justice." (emphasis added). See Merino, 915 P.2d at 693 (holding that trial judges have discretion to require the parties to submit an offer of proof to aid trial judges complete the deliberations regarding whether to accept nolo contendere pleas). In this regard, we agree with the position taken by the First Circuit in United States v. Cepeda Penes, 577 F.2d 754 (1st. Cir. 1978), where the court found no error in a trial court's insistence upon the establishment of a factual basis before it accepted a nolo contendere plea. The First Circuit stated:

> While it may be desirable, in some cases, for a judge to permit a defendant to plead nolo without requiring a factual basis, Rule 11 does not prohibit a judge from exercising his discretion in determining whether to accept such a plea and imposing conditions on its acceptance, subject to review only for abuse of discretion.

Id. at 756 (citations omitted); see also Godek, 438 A.2d at 120 n.13 (adopting the First Circuit's approach). Furthermore, a trial judge may determine that an inquiry into the factual basis is necessary to ensure that the plea is voluntarily, knowingly, and understandingly entered. See McCarthy v. United States, 394 U.S. 459, 466-67 (1969) (stating that a plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts"); Powers v. State, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996) (recognizing that the trial court's failure to establish a factual basis for the plea may contribute to the totality of the circumstances resulting in an unknowing or involuntary plea); State v. Lord, 894 S.W.2d 312, 316 (Tenn. Crim. App. 1994) (perm. app. denied Feb. 6, 1995) (stating that "the factual basis inquiry focuses upon what the defendant understands about the applicable law in relation to the facts he is admitting").

[19]Nolo contendere literally means "'I will not contest it.'" 1A Charles Alan Wright, 1A Federal Practice and Procedure, § 177, at 286 (3d ed. 1999) (quoting Piassick v. United States, 253 F.2d 658, 661 (5th Cir. 1958)).

-16-

purposes of the case in which it is entered).[20]  By entering a nolo contendere plea, a defendant waives several constitutional rights and consents to the judgment of the court.  Because "[w]aivers of constitutional rights not only must be voluntary but also must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," Brady v. United States, 397 U.S. 742, 748 (1970), the record must affirmatively disclose that a plea of nolo contendere was voluntarily, knowingly, and understandingly entered. Boykin, 395 U.S. at 242; Mellon, 118 S.W.3d at 345; Teague v. State, 772 S.W.2d at 943-44.  Where a defendant enters a plea to a crime "without having been informed of the crime's elements, this standard is not met and the plea is invalid." Bradshaw v. Stumpf, __ U.S.__, 2005 WL 1383730, *5 (June 13, 2005) (citing Henderson v. Morgan, 426 U.S. 637 (1976)).

> To ensure that a plea is entered knowingly and understandingly, Rule 11(c)(1), provides: [b]efore accepting a plea of . . . nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that he or she understands, . . .[t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]

As this Court explained in Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993):

> Federal law recognizes the "well-established [principle] that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received 'real notice of the true nature of the charges against him, the first and most universally recognized requirement of due process.'"  *Hence, there must be a full explanation of the offense to which the defendant is pleading . . . .*

(emphasis added) (citation omitted); see also Bryan v. State, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992) (perm. app. denied Nov. 30, 1992); Evans 454 S.E.2d at 335 n.1.  In order to find that a plea was entered knowingly and understandingly a trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244; see Blankenship, 858 S.W.2d at 904.  A court charged with determining whether a plea has been voluntarily and understandingly entered must consider the totality of "various circumstantial factors," including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of

---

[20]A plea of nolo contendere generally is not admissible in evidence in "any civil or criminal proceeding" against the party who entered the plea.  Tenn. R. Evid. 410; Tenn. R. Crim. P. 11(e)(6).  However, nolo contendere pleas "may be used to enhance punishment in the same manner as a conviction after a not guilty plea, unless there is a specific statute to the contrary."  State v. Teague, 680 S.W.2d at 789.

advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904 (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

We conclude that the defendant in this case established that his plea was "not voluntarily, understandingly, or knowingly entered" and therefore conclude that the trial court erred by denying his motion to withdraw. The transcript of the plea submission hearing reflects that the trial judge advised the defendant of the possible penalty for facilitation of first degree murder, but the trial court did not, in accordance with Rule 11(c)(1), explain to the defendant the nature of the offense of facilitation of first degree murder or determine that the defendant understood the offense to which he was entering a plea. Admittedly, the defendant signed a plea agreement in which he stated that his plea had been voluntarily entered, but the plea agreement did not explain the nature of facilitation of first degree murder. We are unwilling to assume that because the defendant signed a plea agreement, the defendant entered his plea with a complete understanding of the charge against him. See McCarthy, 394 U.S. at 464-65. Like the United States Supreme Court, we conclude that such an assumption would ignore the purposes of Rule 11:

> First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the [trial] judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

Id. at 465 (footnotes omitted). A single plea submission hearing was held in this case for the purpose of accepting the defendant's nolo contendere plea to facilitation of first degree murder and Poe's guilty plea to second degree murder. The trial court did not discuss the plea offenses with either defendant, but chose apparently to rely upon their representations that counsel had discussed their cases and all possible defenses with them and that they were satisfied with their attorneys' representation. The better practice is for trial judges to inquire personally of pleading defendants into the matters set out in Rule 11. As the United States Supreme Court said in Boykin:

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

395 U.S. at 243-44 (citations omitted); see also Chamberlain v. State, 815 S.W.2d 534, 540 (Tenn. Crim. App. 1990).

Granted, in many cases it may be possible to determine that a defendant entered a plea with knowledge and understanding of the nature of the plea offense, even when a trial court fails to conduct the Rule 11(c)(1) inquiry. However, under the particular facts and circumstances of this case, it is not possible to do so. This case is quite similar to Henderson v. Morgan, 426 U.S. 637 (1976). In Henderson, the Supreme Court held the defendant's guilty plea to second degree murder was invalid because the defendant entered the plea without having been informed or having understood that an intent to cause the victim's death was an element of the offense. Id. at 645-47. The Court held that due process of law requires that an accused who pleads guilty understand the nature of the charge to which he is admitting guilt. Id. at 647. In so holding, the Court emphasized that the defendant had been formally charged with first degree murder and had not had access to a document charging him with second degree murder. The Court also "assum[ed]" without deciding that "notice of the true nature, or substance, of a charge" does not "always require[] a description of every element of the offense . . . ." Id. at 647 n. 18. The Court further commented that "[n]ormally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused" and pointed out that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice . . . ." Id. at 647. Nonetheless, the Court pointed out that the District Court had found that the element of intent had not been explained to the defendant and held that "intent is such a critical element of the offense of second-degree murder that notice of that element is required." Id. at 647 n.18.

The United States Supreme Court has recently again emphasized that a trial judge need not personally "explain the elements of each charge to the defendant on the record" so long as "the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." See Stumpf, __ U.S. at __, 2005 WL 1383730, at *5. We also agree that a reviewing court may be able to determine that a defendant gained from other sources an adequate understanding of the offense and notice of the nature of the charge to which he or she is entering a plea, even if a trial court fails to comply with Rule 11(c)(1). For example, the defendant may be informed of the nature of the offense by the allegations of the indictment. See, e.g., Henderson, 426 U.S. at 649 n.2 (White, J. concurring) ("In those cases in which the indictment is read to the defendant by the court at arraignment or at the time of his plea, his plea of guilty may well be deemed a factual admission that he did what he is charged with doing so that a judgment of conviction may validly be entered against him."); Bryan, 848 S.W.2d at 76 (rejecting the defendant's claim that he had not understood the nature of the offenses to which he had pleaded guilty and noting that the elements of the offenses had been alleged in the indictment). Another source from which a defendant may gain an understanding of the nature of the offense is the prosecution's summation at the plea submission hearing of the facts relevant to the elements of the plea offense. See, e.g., State v. Johnson, 751 A.2d 298, 322 (Conn. 2000) (citing cases). Furthermore, in some cases the reviewing court may be able to determine that the offense or the

relevant element of the offense is a self-explanatory legal term, so simple in meaning that a lay person can be expected to understand it. See, e.g. Easter v. Norris, 100 F.3d 523, 526 (8th Cir. 1996) (holding that terms "enter" and "intent" in context of burglary did not require further explanation at taking of guilty plea); United States v. Wetterlin, 583 F.2d 346, 350 (7th Cir. 1978) (stating that charge of "conspiracy" is not a self-explanatory legal term so simple in meaning that it can be expected or assumed that a lay person understands it); Waits v. People, 724 P.2d 1329, 1334-35 (Colo. 1986) (holding that district court was not required to define terms "intent," "specific intent," and "theft" for crime of burglary); State v. Mayer, 84 P.3d 579, 584 (Idaho Ct. App. 2004) (stating that, "with respect to the element of penetration, the layperson's meaning of 'rape' corresponds with the legal definition set out in [the statute]"); State v. Young, 646 So. 2d 445, 447 (La. Ct. App. 1994) (rejecting the defendant's claim that his plea was involuntary and noting that "DWI, fourth offense" is a "crime in which the title conveys its elements"); see generally 5 Wayne R. LaFave, et al., Criminal Procedure, § 21.4(c) (2d ed. 1999 & 2005 Supp.). Finally, as the United States Supreme Court has recognized, in many cases it will be possible for a reviewing court to determine that the defense lawyer advised the defendant about the nature of the plea offense, even when the trial court fails to do so. Stumpf, __ U.S. at __, 2005 WL 1383730 at 5 ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty."); Henderson, 426 U. S. at 647. In this case, the record does not reflect that the defendant gained an understanding of the nature of the plea offense from either the trial judge, or defense counsel, or any other source.

The record contains neither an explanation of the charge by the trial judge nor a representation by defense counsel that the defendant had been advised about the nature of the offense. The trial judge simply failed to discuss with the defendant the nature of the offense to which he was pleading nolo contendere. The indictment had charged the defendant with first degree murder rather than facilitation of first degree murder. As previously detailed, in his motion to withdraw, in his testimony at the hearing on the motion to withdraw, and on appeal the defendant has consistently maintained that he did not understand the legal definition of facilitation when he entered the plea. He has also maintained that he and his family had repeatedly advised his attorney that he was willing to enter the nolo contendere plea to facilitation only "if it meant I didn't have nothing [sic] to do with the murder of Mr. Smith." The defendant has further consistently maintained that he entered the plea believing it meant that he had been "present at the crime scene and witnessed the murder." As the dissenting judge on the Court of Criminal Appeals noted, the prosecution's recitation of the proof, to which the defendant's attorney stipulated, was wholly consistent with the defendant's assertions about his understanding of the offense of facilitation to commit first degree murder. When the defendant later realized that facilitation "means I had something to do with it," he sought advice from another attorney, his present counsel, and filed the motion to withdraw because he had not "furnish[ed] any assistance in the commission of the felony." The defendant reiterated, "I had nothing to do with this. I was there. I admit it. But that's all. I was just there." The defendant explained:

-20-

I didn't know . . . facilitation . . . meant that you had something to do with it, because, see if I'd knowed it, I wouldn't have pled to it, because I didn't have nothing [sic] to do with the death of Mr. Smith.

. . . .

See, I am guilty of being there and seeing it, you know, and I thought that's what I was pleading guilty to. And if that's what the time carries just for me being there and seeing it is, you know, then I'm ready to do it. But I didn't have anything to do with the death of Mr. Smith.

Although the defendant is a high school graduate, he had no prior convictions and no prior familiarity with criminal proceedings. Facilitation of first degree murder is not a self-explanatory legal term or a concept so simple in meaning that lay persons can be expected to understand it.

At the hearing on the defendant's motion to withdraw, the State failed to offer evidence or elicit testimony on cross-examination which contradicted the defendant's consistent and strenuous assertions that his attorney had not advised him about the nature of facilitation and the offense to which he entered a plea. Cf. Chamberlain, 815 S.W.2d at 541 (holding that the State may present as a witness at a post-conviction hearing "the attorney who represented the defendant" and recognizing that the State may "establish by the cross-examination of the defendant that he knew the . . . constitutional rights omitted by the trial judge"). Finally, in denying the defendant's motion to withdraw, the trial court neither discounted the defendant's credibility nor determined that the defendant's allegations were without basis. The trial court instead assessed the strength of the prosecution's proof against the defendant and found that a jury question would have been presented. The trial court's findings failed to address the defendant's contention that he had not understood the nature of facilitation of first degree murder and would not have entered the nolo contendere plea had he understood the nature of the offense.

Considering the totality of the circumstances[21] in this case, we are unable to conclude that the defendant's plea was knowingly and understandingly entered. Simply put, the record supports the defendant's assertion that he did not understand the nature of facilitation to first degree murder when he entered his nolo contendere plea. Accordingly, we conclude that the trial court erred in denying the defendant's motion to withdraw. We hold that withdrawal of the defendant's plea is necessary to correct manifest injustice.

## V. Conclusion

We hold that the factual basis requirement of Rule 11(f) does not apply to nolo contendere pleas. Yet, for the reasons stated herein, we further conclude that the trial court erred in denying the

---

[21]Brady, 397 U.S. at 749; Blankenship, 858 S.W.2d at 904; Turner, 919 S.W.2d at 353 (all recognizing that courts must consider the totality of the circumstances in determining whether a plea has been voluntarily, knowingly, and understandingly entered).

defendant's motion to withdraw because the defendant established that his plea was not voluntarily, knowingly, and understandingly entered. Thus, permitting withdrawal of the plea is necessary to correct manifest injustice. Tenn. R. Crim. P. 32(f). Accordingly, we reverse the judgment of the trial court and the judgment of the Court of Criminal Appeals. We grant the defendant's motion to withdraw his plea and vacate his conviction of facilitation of first degree murder, without prejudice to the State to proceed on its original charge or to negotiate an alternate disposition. We remand this case to the trial court for further proceedings consistent with this opinion.

 

 

_____
FRANK F. DROWOTA, III,
CHIEF JUSTICE