# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 19, 2013 Session

## STATE OF TENNESSEE v. MELVIN J. BRANHAM

**Appeal from the Circuit Court for Sevier County**
**No. 15582-II    Richard R. Vance, Judge**

---

**No. E2013-00638-CCA-R3-CD - Filed March 4, 2014**

---

The Defendant, Melvin J. Branham, pled guilty to robbery and received a sentence of fifteen years as a career offender to be served at sixty percent. Pursuant to the terms of the agreement, he was ordered to report for incarceration thirty days following entry of his plea. Prior to the expiration of that thirty-day period, the State successfully sought to revoke the Defendant's bond based upon the Defendant's drug usage. The Defendant thereafter filed a motion to withdraw his guilty plea or have his bond reinstated, arguing that he would not have pled guilty had he known his bond would have been revoked before the thirty days ran out. The trial court denied the motion, and the Defendant appeals. After review, we determine that the trial court did not abuse its discretion in denying the motion to withdraw the guilty plea where the Defendant failed to show a manifest injustice and that the proper avenue for review of the bond revocation was via Rule 8 of the Tennessee Rules of Appellate Procedure. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Benjamin S. Burton, Sevierville, Tennessee, for the appellant, Melvin J. Branham.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; James B. (Jimmy) Dunn, District Attorney General; and Ashley D. McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

A Sevier County grand jury charged the Defendant with especially aggravated robbery, a Class A felony, for offenses allegedly committed against Jeffrey Prather (the victim) on April 27, 2010. See Tenn. Code Ann. § 39-13-403. The Defendant proceeded to trial by a jury on July 18, 2012. At trial, the victim testified that he agreed to meet the Defendant at a Walgreens in Pigeon Forge to purchase some marijuana from the Defendant. Once together inside the victim's car, the Defendant stabbed the victim in the neck and took at least $240.00 in cash from him. Thereafter, the victim was transported to University of Tennessee Medical Center, where he was hospitalized for two days. Following the State's direct examination of the victim, the Defendant expressed a desire to enter a guilty plea.

After questioning the Defendant about the various rights he was waiving, the trial court accepted the Defendant's plea to robbery, a Class C felony. See Tenn. Code Ann. § 39-13-401. The plea agreement consisted of the following terms: a fifteen-year sentence as a career offender, to be served at sixty percent; payment of restitution and court costs; a restraining order protecting the victim and another State's witness; and a report date of August 18, 2012, by six p.m. for incarceration. Additionally, the prosecutor stated, "[W]hile he's out for the next thirty days, he's to be on an ankle monitor and he's going to report to probation tomorrow to get the ankle monitor." The court ordered the Defendant to "report to probation tomorrow" to obtain the ankle monitor and instructed the Defendant that he was not leave town as another "condition of . . . remaining on bond until the 18th."

The State filed a motion to revoke the Defendant's bond on July 30, 2012, alleging the following:

> On July 27, 2012, [the Defendant's] ankle monitor was removed. When probation arrived at [the Defendant's] house, he admitted to the use of Marijuana within the past 30 days, Roxicodone with the past 5 days, Morphine within the past 5 days, and Xanax within the past 14 days. Additionally, [the Defendant] admitted that he was injecting Roxicodone and Morphine, and showed probation "track marks" on his arms where he had injected the drugs.

A bond revocation hearing was held the following day.

At the hearing, the Defendant's probation officer Anthony Kale testified about the allegations contained in the motion. Mr. Kale stated that, once the Defendant's ankle monitor was removed from his leg on July 27, 2012, he and another officer attempted to locate the Defendant. It was determined that the Defendant was no longer at his residence, so they "were watching him" and trying to contact him. At some point, they were successful in getting a hold of the Defendant, who informed them that he was on the way to meet his

girlfriend at the restaurant where she worked. They instructed the Defendant "to go to the probation office immediately[,]" and he complied.

Once the Defendant arrived, he was unable to "produce" urine for a drug test. After they observed "track marks" on the Defendant's arms, he admitted to using the drugs identified in the motion according to Mr. Kale. An "admission of use" form was entered into evidence.

On cross-examination, Mr. Kale was asked, "[W]here did [he] get the understanding that [the Defendant] was to be free from drug use[,]" and Mr. Kale responded, "It's an illegal activity. I thought that goes without saying." Mr. Kale stated that he was unaware of any order instructing that he drug test the Defendant. Mr. Kale confirmed that the Defendant did call the probation office once the ankle monitor came off, although the Defendant apparently "left a message with the wrong officer." It took approximately "two hours, two and a half" hours to locate the Defendant after receiving the alert that the ankle monitor had been removed.

The Defendant testified that he was not informed that he would be subjected to random drug screens as a part of the plea agreement. He explained how the ankle monitor came off his leg, stating that it came off while he was helping his mother move some boxes and a bed. He claimed he "rushed next door" to borrow a phone and called the probation office immediately. When he was unable to reach anyone at the probation office, he called "the sheriff's department dispatch to inform them . . . that [he] wasn't running." He then went to his girlfriend's work to get the "charger" to charge the ankle monitor, which was in his girlfriend's car. While en route, the Defendant received a call from a probation officer and went to the probation office to meet him. The Defendant stated that he was truthful with the officers about his drug usage and confirmed that he had "been at every court date that [he] had] known about[.]"

On cross-examination, the Defendant claimed that he used Oxycodone rather than Roxicodone and that he had a prescription for the Oxycodone, although he admitted he did not have a prescription for the other medications. The Defendant was then asked about how he obtained the drugs. He stated that, after his guilty plea in this matter, a friend of his, "a known drug user, a drug seller[,]" contacted him because the Defendant was "going away for a while" and wanted to "do a pill one more time together." The Defendant confirmed that he injected the morphine intravenously. On redirect, the Defendant stated that he would not have entered his guilty plea "had the thirty days to report for [his] sentencing not been a part of that agreement[.]"

The State argued that the Defendant's bond should be revoked because of his illegal drug use. Defense counsel replied that the purpose of the bond was to ensure the Defendant's appearance in court, which was an issue unrelated to the Defendant's drug usage. The trial court revoked the Defendant's bond, ruling as follows:

> It would appear the allegation regarding the ankle monitor has been conceded. The State's own witnesses say that he contacted the probation department. He made the calls. It came off apparently accidentally. There's nothing to refute that.
>
> What concerns the [c]ourt is the illegal use of high-powered drugs, injecting those drugs.
>
> There are two purposes of bond, not just one. The first purpose is to ensure someone's attendance at court. He's appeared. He's appeared when scheduled. The other purpose is to ensure the public safety of the community and of this defendant. The injection of illegal drugs is dangerous. He tells us that he met with a known drug dealer, someone in the business of dealing drugs, used these drugs. A person under the influence of drugs does constitute a threat of safety to himself, to others while he's under the influence.
>
> It is implicit in any condition of release in the community, whether it's on bond, whether it's on probation, whether it's on a furlough or whatever it is, that the person not commit any crimes. It is a crime to illegally use narcotics.
>
> . . . .
>
> . . . The [c]ourt has to bear in mind too, this whole case from the facts that I heard and the stipulated facts presented in the plea revolved around drugs. This defendant and this victim got together for a drug transaction which resulted in a serious injury and led to this case. It was about drugs. And that alone demonstrates the danger to the public and to others and to himself anytime you're engaged in illegal drug transactions. That's what this case was all about. A man was seriously injured.
>
> So for all those reasons the bond is revoked. He's ordered into custody immediately to begin serving the sentence.

On that same date, the Defendant filed a motion to withdraw his guilty plea or that his bond be reinstated.[1] A hearing on the motion was held on February 6, 2013. First, defense counsel argued that revocation of the Defendant's bond was improper because "making

---

[1] Although the motion states that a memorandum of law is attached, no such pleading appears in the appellate record. It is the appellant who bears the burden of preparing a complete record on appeal. See State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). Accordingly, we will rely on the arguments of defense counsel set forth at the hearing on the motion.

statements to a probation officer of drug use is not a reason to violate bond conditions." Next, defense counsel submitted that the Defendant should be allowed to withdraw his guilty plea due to a "manifest injustice," in that he was never informed that drug usage would violate his plea agreement. As an alternative to withdrawal of the plea, defense counsel asked that the Defendant be granted the originally agreed to thirty-day period, noting that the Defendant's father had recently passed away and the family wanted "to have some sort of get-together and say[] goodbye." In reply, the State first noted the previous revocations of the Defendant's bond prior to the jury trial in this case and then that the previous conditions of the Defendant's bond were still in effect, conditions which included not associating "with known drug users" and not using drugs.

The trial court denied any request for relief from the Defendant, ruling as follows:

> There is no evidence or argument even about the plea itself, and the [c]ourt found and still finds today in absence of any argument to the contrary that [the Defendant's] waiver of his right to trial by jury, the guilty plea and his plea of guilt were freely and voluntarily and knowingly made. The ultimate conviction, sentence, was exactly as agreed upon and is exactly as ordered by the [c]ourt. The disparity and the dispute is not over the voluntariness of the plea, the understanding of his plea. It's on what happened after his plea while he was permitted to remain on bond for a period of thirty days to wrap up his affairs. The State agreed that he could remain on bond. The [c]ourt approved that agreement. Certain bond conditions remained in place. At the hearing it was determined, found by the [c]ourt and admitted by [the Defendant], and I appreciate his candor, that he had been using illegal drugs intravenously during that time. He had lost the monitor or the monitor had come off and was replaced, but that was a violation of the bond condition, not just that he had used drugs, but that he was involved in intravenous drug use and by necessity associating with other people who are involved in illegal drug activity. The [c]ourt found overwhelmingly that he had violated the conditions of his bond, bond conditions that he knew, that were in writing, and were made clear to him. The revocation of that bond did not impact or affect the sentence. It did not change the sentence and plea agreement he had reached. It only affected whether he was to remain on bond for that thirty days.
>
> The State did not violate the agreement. [The Defendant] violated the agreement. It was his conduct, the use, the intravenous use of illegal drugs during that period of time that resulted in the State filing its motion, and the [c]ourt revoked the bond. And the [c]ourt finds it was proper to do so.

The trial court entered an order to that effect, and the Defendant timely appealed the denial of his motion to this court.

## ANALYSIS

On appeal, the Defendant argues that the revocation of his bond was improper and creates a manifest injustice for which the Defendant's guilty plea may be withdrawn. He sets forth several reasons why the revocation of his bond was improper, contending (1) that his previous bond had expired and probation was not imposed; (2) that there was no indication from the record that the Defendant remained on any of the previous bond conditions; (3) that the order setting forth the original bond conditions did not meet statutory requirements; and (4) if the bond conditions were properly in place, that violation for drug usage and associating with drug users was improper. He then contends that he was never informed that "casual drug use would violate the terms of his plea agreement[,]" and therefore, the State breached its agreement allowing the Defendant to be released for thirty days before he had to report for execution of his sentence. The State responds that the trial court properly denied the Defendant's motion to withdraw his guilty plea filed after the trial court revoked his bond. Specifically, the State asserts that the Defendant remained on bond following his guilty plea and that revocation for drug usage and association with drug users was proper. Finally, the State notes that, if the revocation of the Defendant's bond was somehow improper, the appropriate avenue for relief was to file a Tennessee Rule of Appellate Procedure 8 motion in this court, that it does not follow that he may now withdraw his guilty plea.

Our Rules of Criminal Procedure provide, "After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). In analyzing the meaning of "manifest injustice," this court wrote,

> Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. Withdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear or fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered, and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

-6-

State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008) (internal citations omitted). A defendant bears the burden of establishing that his plea should be withdrawn to correct a manifest injustice. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Moreover, this court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005).

The issue in this case is whether the trial court properly denied the Defendant's motion to withdraw his guilty plea after the trial court revoked the Defendant's bond.[2] The Defendant cites to Tennessee Code Annotated sections 40-11-130 and 40-11-138, arguing that the trial court lacked the authority to place him on bond after his sentence was pronounced and failed to order a period of probation, its only option. However, it is clear from the record that the Defendant requested a report date of thirty days from the date of sentencing and agreed to "remaining on bond" as a part of the plea agreement. At the motion hearing, the Defendant did not challenge the trial court's authority to impose bond for thirty days following his plea but only challenged the trial court's authority to revoke the bond based upon certain conditions. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) ("Ordinarily, issues raised for the first time on appeal are waived."); see also Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Because the Defendant agreed to being placed on bond, and because the Defendant failed to raise the issue of the trial court's authority to order such in the proceedings below, we decline to engage in an analysis of the bond statutes as requested by the Defendant.

Additionally, we agree with the State that revocation of the Defendant's bond based upon the imposition of certain conditions, not associating with known drug users and not using drugs, is not appealable pursuant to Rule 3. See Tenn. R. App. P. 3(b); see also State v. Melisha Moore, 262 S.W.3d 767, 771 (Tenn. Crim. App. 2008) ("[T]he imposition of a bond condition imposing random drug screens is not appealable pursuant to Rule 3."). Rather, Tennessee Code Annotated section 40-11-144 governs review of release decisions:

> (a) The actions by a trial court from which an appeal lies to the supreme court or court of criminal appeals in granting, denying, setting or altering conditions of the defendant's release shall be reviewable in the manner provided in the Tennessee Rules of Appellate Procedure.

---

[2] As discussed below, the Defendant has not followed the proper procedure for review of any motion to reinstate his bond.

(b) If the action to be reviewed is that of a court from which an appeal lies to a court inferior to the supreme court or court of criminal appeals, review shall be sought in the next higher court upon writ of certiorari.

Tenn. Code Ann. § 40-11-144. Additionally, Rule 8 of the Tennessee Rules of Appellate Procedure provides, in pertinent part, as follows:

Before or after conviction the prosecution or defendant may obtain review of an order entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals granting, denying, setting or altering conditions of defendant's release. . . . After conviction and after the action is pending on appeal, a written motion may be made either in the trial court in which judgment was entered or in the appellate court to which the appeal has been taken. On entry of an order granting or denying a motion for a change in bail or other conditions of release, the trial court shall state in writing the reasons for the action taken.

Review may be had at any time before an appeal of any conviction by filing a motion for review in the Court of Criminal Appeals or, if an appeal is pending, by filing a motion for review in the appellate court to which the appeal has been taken.

Tenn. R. App. P. 8(a). Rule 8's purpose is to ensure "the expeditious review of release orders." Id., Advisory Comm'n Cmts. Not only is Rule 8 designed to expedite review of release orders, but our supreme court has said that it also is the "only effective remedy" for "addressing unsatisfactory release orders . . . ." State v. Melson, 638 S.W.2d 342, 358 (Tenn. 1982). Thus, the proper method of review of either of the trial court's orders revoking the Defendant's bond or declining to reinstate his bond was by filing a motion for review in this court. See Tenn. R. App. P. 8; see also Moore, 262 S.W.3d at 771. The Defendant has failed to follow the proper procedure for filing a Rule 8 appeal, and we decline to treat this appeal as such.[3]

We now turn to the issue at hand—whether revocation of the Defendant's bond created a manifest injustice for the which the remedy would be to allow withdrawal of this guilty plea. The Defendant argues that his plea was not knowingly, voluntarily, and understandingly entered because he "was never informed that casual drug use would violate the terms of his plea agreement." We disagree. The Defendant's casual drug usage violated the terms of his bond rather than the terms of his plea agreement. Any error in this regard

---

[3] Accordingly, we likewise will not address the Defendant's allegation concerning the trial court's failure to state its reasons for altering the conditions of the Defendant's bond in writing.

could be expeditiously reviewed by the procedures outlined above. The appropriate remedy would not have been to set aside the Defendant's plea, and the Defendant makes no real argument that the imposition of the initial thirty-day period to report was somehow material to his decision to plead guilty. In fact, at the motion for withdraw hearing, which took place over six months after his bond was revoked, the Defendant, as an alternative remedy, asked for the imposition of the original thirty-day period, noting his father's recent death.

We agree with the trial court that revocation of the Defendant's bond did not impact the ultimate, fifteen-year-sentence agreement reached by the parties, only affecting whether the Defendant was able to remain on bond for thirty days. The Defendant's plea colloquy shows that he entered his plea voluntarily and that he understood the terms of the plea agreement and the rights he was waiving by entering his plea. On this record, we cannot find that the trial court in any way abused its discretion in denying the Defendant's motion as there was no manifest injustice that would require the withdrawal of the guilty plea. This issue is without merit.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion in denying the Defendant's motion to set aside his plea and that the Defendant has failed to follow the proper procedure for review of the revocation of his bond. Accordingly, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE