# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville October 13, 2015

## STATE OF TENNESSEE v. JANETTE EBONY ROBINSON

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-643    Cheryl A. Blackburn, Judge**

---

**No. M2015-00041-CCA-R3-CD – Filed December 15, 2015**

---

The Defendant, Janette Ebony Robinson, pleaded guilty in the Criminal Court for Davidson County to two counts of aggravated child abuse and received two concurrent twenty-five-year sentences. *See* T.C.A. § 39-15-402 (2014). The Defendant appeals the trial court's denial of her motion to withdraw her guilty plea. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ. joined.

David Harris (on appeal); Jason Chaffin (at motion to withdraw the guilty plea hearing), Nashville, Tennessee, for the appellant, Janette Ebony Robinson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Glenn Funk, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Defendant's March 7, 2014 guilty pleas to two counts of aggravated child abuse pursuant to a negotiated plea agreement. After the guilty plea hearing, the Defendant mailed a handwritten "motion" dated March 29, 2014, to the trial court judge seeking to withdraw her guilty pleas. On April 8, 2014, a copy of the letter was forwarded to defense counsel by the trial judge's office manager. On June 2, 2014, defense counsel filed with the court clerk a motion to withdraw the guilty pleas and a motion to withdraw as counsel.

At the guilty plea hearing, the prosecutor summarized the facts as follows:

[T]he victim in this case [was] three years of age at the time of these particular offenses. . . . August of [2011, the victim] was returned to the care of [the Defendant] on a trial basis and remained in her care through the month of August and September up until October 14th of 2011 when [the victim] was admitted to the hospital . . . September 26th of 2011, [the victim] presented to Vanderbilt Hospital with a fracture of her arm. Initially the medical staff accepted [the Defendant's] explanation for this as an accidental injury. However on October 14th of 2011 [the victim] was [re-presented] to Vanderbilt Hospital. At that time she was diagnosed with a lacerated pancreas, a hematoma to her liver, hematomas to her head, severe bruising around her head, a concussion, and various cutaneous injuries.

On October 17th a skeletal survey was done, which revealed an undetected rib fracture that was healing, suggesting it had been caused between the arm fracture and the date of her admission based on the timing of that injury.

Specifically [the Defendant] was asked to describe the circumstances surrounding [the victim's] injuries. She provided a number of conflicting accounts, admitted that she was the caretaker for [the victim]. [The victim] had injuries that represented whip marks from a belt or a cord based on the pattern of injuries. Those occurred during the time period between August 5th of 2011 and September 26th of 2011. She was observed to cause those injuries by Mr. Taylor as well as the accounts of one of [the victim's] siblings.

. . . .

[T]he liver hematoma and the lacerated pancreas as well as the head injuries, those occurred on or around October 14th, 2011, based on the information [the Defendant] provided to medical staff about when the child became symptomatic. There were no other individuals who were in a position to have caused these particular injuries on that particular date.

At the guilty plea hearing, the Defendant testified that she and defense counsel discussed the charges, the potential sentences, and the possibility of consecutive service. The Defendant said she understood that the two convictions would appear on her record permanently and could be used to enhance the sentence of any future conviction. The Defendant said that she and counsel reviewed available defenses and the discovery file. The Defendant said that she had an eleventh-grade education and that counsel read the

plea agreement form to her. She said that she asked counsel questions and that she was satisfied with his answers.

The Defendant testified that she was prescribed Depakote and Zyprexa, that she had taken them the evening before and morning of the guilty plea hearing, and that the medication did not affect her ability to understand the terms of her plea agreement. The Defendant said that she understood she was waiving her right to a trial and that her guilty pleas were not based on any threats or promises. She said that she was satisfied with defense counsel and that he had done everything she asked of him.

The trial court explained to the Defendant her right to an attorney at trial, her right to cross-examine witnesses, the State's burden of proof, her right not to testify, her right to a sentencing hearing, and her right to an appeal. The Defendant said she wanted to waive her rights and enter guilty pleas.

After the guilty plea hearing, the Defendant sent a letter to the trial judge dated March 29, 2014, entitled "Motion to withdraw plea (due to pressure and lack of information for my rights by [defense counsel]," which stated the following:

> Good morning Your Honor, On 3-7-14, I was given advice to take plea DA made, that I really had no choice. So, I did as I was told but, didn't understand choice [attorney] told me to make. I'm asking the court to withdraw my plea and allow me to have a fair plea or trial and be explained my rights so, I understand [completely] the outcome of my [decision] or verdict by court. Thank you for your time and concern in this matter.

The judge's office manager replied in an April 8, 2014 letter that the judge could not communicate with the Defendant regarding a pending proceeding, that the letter would be placed in the court file and forwarded to defense counsel, and that the Defendant should direct any questions to counsel. On June 2, 2014, counsel filed motions to withdraw the guilty pleas and to withdraw as counsel.

At the hearing on the motion to withdraw the guilty pleas, the trial judge questioned the prosecutor and defense counsel regarding the filing date of counsel's motion to withdraw the guilty plea, which was submitted more than thirty days after the sentences were imposed. *See* Tenn. R. Crim. P. 32(f)(2) ("After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice."). The prosecutor answered that the Defendant "made an attempt to do that on her own" in a March 29, 2014 handwritten letter to the court. The judge said that her office manager "responded to her on April the 8th. Her hand is dated 3-29. The envelope that came with

that is dated March the 31st.  That would be the date that we would consider relevant.  So we need to make this an exhibit to this hearing. . . . [W]e've addressed that issue."

The Defendant testified that she remembered writing a "letter or a motion" and mailing it to the trial judge.  She said that she had been diagnosed with "paranoid schizophrenia and bipolar, PSOD and psychopath and I'm now taking Seroquel, Trazodone . . . and some more other medicines."  She said that she had been hospitalized more than five times as an adult due to her psychiatric issues.  The Defendant stated that after her arrest, she took her medications "on and off" in the jail.  She said that the medications managed her symptoms, but that if she stopped taking them, she heard voices, hallucinated, experienced mood swings, and had difficulty concentrating.  The Defendant said she was supposed to take six pills a day in jail, but three weeks before the guilty plea hearing, she started hearing voices telling her that her attorney and the trial judge were "out to get her" and that she should stop taking her medications.  She said jail staff sometimes watched her take the medications, but she hid the pills under her tongue and spit them in the trash.

The Defendant testified that when she stopped taking her medications, "I started thinking people was out to get me, hearing voices, seeing things, not be able to be around too many people.  I just stayed in my room and [did] not eat or take my medication."  She said that the symptoms were frightening and familiar to her.  The Defendant said that she did not remember what she told the trial judge at the guilty plea hearing.  She said that the day of the hearing "was very hard for me" due to her psychiatric symptoms and that she did not understand what she was doing when she pleaded guilty.

The Defendant testified that when she went into Tennessee Department of Correction (TDOC) custody, the prison staff placed her medications in water and examined inside her mouth to ensure she swallowed the medication.  As a result, she "experienced a marked difference" in her comprehension.

The Defendant testified that her mind was currently clear and that she understood withdrawing the guilty plea would reinstitute the original charges against her.

On cross-examination, the Defendant identified the handwritten letter she sent to the trial judge and testified that she mailed it without any legal advice.  She acknowledged that in the letter, she did not claim she was not taking her medication, was suffering from mental illness at the guilty plea hearing, or was not of sound mind at the hearing.  The Defendant said that she did not "think I was supposed to tell [the judge] that."  The Defendant stated that she wrote the letter because she started taking her medications after she was sent to prison on March 24.  Although the Defendant had not resumed taking her medications on March 24, she said that on that date "it was coming to

me that I had done something wrong in entering my plea" and that she felt like she should have written the judge a letter.

The Defendant testified that she wrote the letter because her mind was clearer after resuming her medications, and she denied that she wrote the letter solely because she realized she was serving twenty-five years in prison. She thought she sporadically took some medication at the jail between the time she entered her pleas and when she went into TDOC custody. She said she did not write the letter from the jail because she "had a lot of things to think about." The Defendant said that the jail staff watched her take her medications but that they did not examine her mouth or place the pills in water to ensure she swallowed them. She said that the inmates emptied the trash cans and that the jail staff never saw her pills in the trash.

The Defendant testified that she told defense counsel she was not taking her medications but could not remember when. The Defendant recalled counsel's asking her at the jail whether she had been taking her medications, and she told him she had not. The Defendant said that she told counsel at every meeting before she entered her guilty pleas that she had not been taking her medications and that counsel knew she had been off her medications for three weeks before the plea hearing. The Defendant stated that counsel never asked how she was avoiding taking the medications. She did not remember how long she took medication at the jail before she stopped but later said that at the time she stopped taking her medications, she had been taking them since her arrest one year earlier.

The Defendant testified that she stopped taking her medications because she was worried about going to court and about her daughter. She denied accepting the plea offer because of the reduced sentence. She did not remember discussing with defense counsel that she faced a "constructive life" sentence if she went to trial. The Defendant said that she did not contact counsel when she decided she wanted to withdraw her pleas but that she discussed her decision with her family.

The Defendant testified that when she wrote in the letter she wanted a fair plea, she meant she wanted to "get back on my meds and start over again." She said that the plea was unfair because she did not understand her case, defense counsel did not show her the police reports, witness statements, medical records, or the Defendant's statements, and counsel "just said to do twenty-five or 125, like a lot of numbers. . . . I wasn't taking my medicine and I didn't understand." The Defendant said that she had not read the transcript of the guilty plea hearing and that she did not remember the hearing. She said she was "more focused now, and I'm understanding things more." The Defendant stated that her attorney at the hearing had not reviewed discovery with her, but she later testified

that he did.  She said that they discussed the likelihood of conviction at a trial and the evidence against her.

On redirect examination, the Defendant testified that she knew in advance the date of the guilty plea hearing and that her symptoms became worse as the date approached, leading to her refusal to take her medications.  On recross-examination, the Defendant testified that defense counsel told her one month before the March 7 hearing that the purpose of the hearing was to enter her guilty pleas.

Defense counsel testified that he was appointed to the Defendant's case in criminal court.  He said that there was "voluminous" discovery.  Counsel said that the plea offer was extended "for a good bit of time" before the guilty plea hearing and that the Defendant pleaded guilty at a status conference on March 7, one month before the trial date.  Counsel stated that he discussed the discovery materials with the Defendant, communicated the plea offer to her, and told her that the offer remained open.

Defense counsel testified that at a meeting in late 2012 or early 2013, the Defendant told counsel, "I'm taking my medication now.  And I took that to indicate that sometime prior that she hadn't been."  Counsel denied the Defendant told him that she had stopped taking her medications at the time of the guilty plea hearing.  He said that had the Defendant said she was not taking her medications, he would not have gone forward with the plea hearing.  Counsel said,

> [It] was clear to me all along that she suffered from a mental illness. . . . But there wasn't anything in particular about her that day that was exhibiting anything different than previously.  I mean, she was scared, and it was a pressure situation. . . . But as far as mental illness, no, I didn't have any indication that she wasn't capable of understanding.

Defense counsel testified that although the prosecutor initially told counsel the plea offer would be revoked after March 7, the prosecutor agreed to extend the expiration date by one week.  Counsel said he was first notified that the Defendant wanted to withdraw her guilty pleas when he received a copy of the letter she sent to the trial judge.  Counsel stated that the letter did not address the Defendant's medications and that the Defendant never contacted him after entering her guilty pleas to tell him she had not been taking her medications.

Defense counsel testified that after he received the copy of the Defendant's letter, he filed a motion to withdraw as counsel.  He said that he had not spoken to the Defendant since the guilty plea hearing.  Counsel stated that based on his observations, he

saw no indication that the Defendant "was not exercising a knowing, voluntary, and intelligent waiver of her rights" when she pleaded guilty.

On cross-examination, defense counsel clarified that he was in contact with the Defendant in late 2013 and early 2014. He said that due to the Defendant's statements to him, he knew the Defendant had a history of not taking her medications in jail. Counsel stated that on the day of the guilty plea hearing, the Defendant was crying and "her body language and her demeanor to me [showed] that she was scared and upset." Counsel said it was possible that the Defendant could have been scared because of psychiatric symptoms and not because of the court proceedings. Counsel stated that he was familiar with the symptoms of schizophrenia and that people suffering from schizophrenia became "withdrawn and frightened and crying and scared because of things they hear inside their heads."

The trial court denied the Defendant's motion, finding that the "timing of raising this issue [was] suspicious as it appears Petitioner has 'buyer's remorse' once transported to TDOC to serve her 25-year sentence." The court noted that the handwritten letter did not mention the Defendant's mental health issues or medications. The court found that the Defendant's testimony at the guilty plea hearing regarding her medications and mental state belied her claim. The court found that at the guilty plea hearing, it had questioned the Defendant relative to the medications she was taking, how often she took them, whether she had taken them immediately before the hearing, and whether the medications affected the Defendant's mental state. The court concluded that the Defendant failed to show that setting aside her pleas was required in order to prevent a manifest injustice. This appeal followed.

The Defendant contends that the trial court erred when it denied the motion to withdraw the guilty pleas, arguing that her testimony regarding her lack of medication established manifest injustice. The State responds that the court correctly denied the motion and raises for the first time on appeal that the letter was not filed with the court clerk as required by Tennessee Rule of Criminal Procedure 49(a) and that defense counsel's untimely June 2 motion was the only properly filed motion. The Defendant argues in turn that her March 29 letter to the trial judge should have been considered a motion to withdraw her guilty pleas and therefore the motion was timely.

Tennessee Rule of Criminal Procedure 32(f) states that a trial court may set aside a guilty plea "[a]fter sentence is imposed but before the judgment becomes final" in order to correct a "manifest injustice." Generally, a judgment becomes final thirty days after the entry of a guilty plea and imposition of a sentence. T.R.A.P. 4(a) and (c). A "trial court is without jurisdiction to hear and decide a motion to withdraw a guilty plea after the judgment is final." *State v. Green*, 106 S.W.3d 646, 649 (Tenn. 2003) (citing *State v.*

*Peele*, 58 S.W.3d 701, 704 (Tenn. 2001); *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996).

When questioned about the timeliness of the motion at the motion to withdraw the guilty plea hearing, the prosecutor told the trial court that the Defendant "made an attempt to do that on her own" and referenced the March 29 letter. The court accepted the March 31 postmark as the date of filing and considered the motion on its merits without objection by the prosecutor.

Tennessee Rule of Criminal Procedure 32(f) states that the trial court may permit the withdrawal of a guilty plea "to correct manifest injustice" after the sentence is imposed but before the judgment becomes final. Our supreme court has found manifest injustice when

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland* . . . and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005) (citations omitted). We review a trial court's finding regarding manifest injustice for an abuse of discretion. *Id.* at 740 (citing *Henning v. State*, 201 S.W.2d 669, 271 (Tenn. 1947).

The record reflects that at the guilty plea hearing, the trial court questioned the Defendant regarding her understanding of the charges against her, her available defenses, the possible sentences, and the effect of the guilty plea on her permanent record. The court also questioned the Defendant relative to her medications, how often she took them, and any possible effect they might have on her understanding of the proceedings. The Defendant testified she had been taking her medications, acknowledged her understanding of her plea, and said she wanted to waive her rights and plead guilty.

The Defendant's letter contained complaints about defense counsel's explanation of her rights but did not mention her medications. Counsel testified that the Defendant did not contact him after her plea and that the first notice he received of any problem was when he received the forwarded letter from the trial court. The trial court credited counsel's testimony that the Defendant did not tell him prior to the guilty plea hearing she had not been taking her medications. The court did not abuse its discretion in finding

that the Defendant entered a voluntary, intelligent, and knowing plea, and therefore, that no manifest injustice existed.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE