IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2019 Session

**STATE OF TENNESSEE v. ARNOLD ASBURY**

**Appeal from the Criminal Court for Monroe County
Nos. 15340, 16177   Sandra Donaghy, Judge**

———————————————

**No. E2018-01095-CCA-R3-CD**

———————————————

Arnold Asbury, Defendant, claims that the trial court erred by denying his "Motion to Withdraw Guilty Plea Prior to Sentencing" and, as a result, that he was denied a right to trial by jury.  Although we determine that the trial court did not abuse its discretion in denying the motion to withdraw the guilty plea, we determine that the trial court committed reversible error at the subsequent sentencing hearing because it neither properly accepted Defendant's Tennessee Rule of Criminal Procedure 11(c)(1)(C) plea agreement pursuant to Rule 11(c)(4) nor properly rejected the plea agreement pursuant Rule 11(c)(5).  We reverse the judgments of the trial court and remand for a hearing in which the court may, in its discretion, either reject or accept the Rule 11(c)(1)(C) plea agreement.   If the trial court rejects the plea agreement and Defendant opts to withdraw his guilty pleas, Defendant will have the right to a trial by jury.  If the trial court accepts the agreement, it must sentence Defendant pursuant to the terms of the plea agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed
and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Matthew C. Rogers, Athens, Tennessee, for the appellant, Arnold Asbury.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General; and Shari L. Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Because the procedural background of this case is unusual and difficult to follow, we will include numerous dates and attempt to explain what transpired in chronological order.

## PROCEDURAL BACKGROUD

On September 2, 2015, the Monroe County Grand Jury indicted Defendant in Case No. 15340 for possession of over 0.5 grams of cocaine for resale, possession of more than one-half (1/2) ounce but less than ten pounds (10 lbs.) of marijuana for resale, possession of over 0.5 grams of methamphetamine for resale, and possession of drug paraphernalia. On May 6, 2016, the Monroe County Grand Jury indicted Defendant in Case No. 16177 for simple possession of cocaine, simple possession of marijuana, and possession of drug paraphernalia.

### *Plea Submission Hearing*

On September 26, 2016, Defendant filed a "Petition to Enter Plea of Guilty and Waiver of Trial by Jury and Appeal" (the plea petition), and the plea submission hearing was held that day. Section 23 of the plea petition provided:

> I respectfully request that the [c]ourt accept my plea and fix the punishment. The crime(s) to which I am pleading guilty and the punishment(s) to which I have agreed are as follows:

| Docket No. | Offense | Sentence |
|---|---|---|
| 15-340 | poss. of over 0.5 grams methamphetamine for resale | 17 years Range II |
| 15-340 | poss. of over 0.5 grams cocaine for resale | 17 years Range II |
| 15-340 | poss. of marijuana | 11/29 |
| 15-340 | poss. of drug paraphernalia | 11/29 |
| 16-177 | simple poss. Sch. II | 11/29 |
| 16-177 | simple poss. Sch. IV | 11/29 |
| 16-177 | poss. of drug paraphernalia | 11/29 |

The sentences were all ordered to be served concurrently.

Section 21 of the plea petition provided: "I understand that, by pleading guilty, I waive the right to trial and, after the [c]ourt accepts my plea of guilty, the decision is final, there will be no further trial, and I cannot change my mind or reopen the case." The signed "Consent of District Attorney" at the end of the plea petition, provides: "The

undersigned Assistant District Attorney consents to [D]efendant's waiver of trial by jury and approves and concurs in the preceding petition."

At the outset of the plea submission hearing, the trial court announced that in Case No. 15340, "The State is recommending that you be sentenced as a multiple, or thirty-five percent release eligibility [o]ffender to seventeen years in the penitentiary." The trial court next questioned Defendant concerning his request to be allowed to turn himself in to the sheriff at the Monroe County Jail on Friday, September 30, 2016. Counsel for Defendant[1] explained:

> He has some family obligations that he has to make arrangements for, an elderly mother, as well as other family situations that he's gotta' take care of.
>
> And, Your Honor, I don't often do this, but I've known [Defendant] for a long time, even prosecuted [Defendant] myself. [Defendant] has never missed a date, period, whether court or anything otherwise.
>
> I don't think that he will be a problem at all. He's a lifetime resident of Monroe County. Quite frankly, he doesn't really have anyplace else to go so he will – I have no doubt he'll turn himself in on Friday.

The Assistant District Attorney then stated:

> Your Honor, if I may, I have prosecuted [Defendant] in the past as well. I will say he does always show up, and so I don't have any fear that he's not gonna show up on Friday, but I also know he understands that if he does not show up what kind of consequences he will be facing then. Because he is a career [o]ffender, and this agreement –
>
> . . . .
>
> Technically, Your Honor, if we had gone to trial on Wednesday, and had he been found guilty of everything that he was charged with, [t]he [c]ourt would have the authority to sentence him as a career [o]ffender [to] thirty years at sixty percent.

---

[1] We will refer to the counsel who represented Defendant at the plea submission hearing as "counsel for Defendant." After counsel for Defendant was allowed to withdraw, new counsel was appointed. We will refer to the new counsel as "trial counsel."

The trial court then stated:

> So, [Defendant], let me – let just tell it to you from my perspective. I believe these [l]awyers when they tell me you always show up. But somebody is gonna say, what was that [j]udge thinking, to sentence a man to a bunch of years in the penitentiary and then to let him walk outta' there.
>
> If you don't turn yourself in -- this is what I'm gonna do to protect myself, *I'm not gonna sign these judgments today*. I'm gonna wait till Friday, and I'm gonna get confirmation from the jail, and if you turn yourself in, the sentence will go down effective that day. But *if you don't turn yourself in, then, I have not accepted this plea*, and then there's not gonna be any negotiating for thirty-five percent on whatever. We're gonna actually *have you plead, or go to trial as* -- wherever the pieces fall. And if you are a career [o]ffender, then you're just not looking [at] . . . thirty years [at] sixty percent." (emphasis added).

After explaining consecutive sentencing, the trial court warned Defendant that, if he failed to report, he faced a maximum sentence of "sixty years, plus five 11/29's." The trial court then restated the recommended sentence for each of the four counts in Case No. 15340 and the three counts in Case No. 16177, and asked, "Is that the agreement that you have with the State of Tennessee?" Defendant answered affirmatively and stated that the sentence he had "negotiated" was seventeen years.

After the trial court asked Defendant if he knew what would happen if he did not "turn [him]self in at the jail on Friday," the following dialogue took place:

> DEFENDANT: You just told me you could enhance it more or less, I guess, the sentence or whatever. Make it consecutive.
>
> COUNSEL FOR DEFENDANT: Basically, [the court] won't accept the –
>
> STATE: Agreed -- yeah.
>
> COUNSEL FOR DEFENDANT: -- agreement, and *you'll either have to plead as charged, period, as a career [o]ffender* –
>
> STATE: Right.

COUNSEL FOR DEFENDANT: -- *or go to trial*, and accept the risk there, and if you're convicted, she conducts the sentencing, period.

STATE: Yes.

THE COURT: *There is no negotiation*.

DEFENDANT: I understand.

. . . .

THE COURT: Did you sign [the plea paperwork] to certify to me that you know and understand your rights –

DEFENDANT: Yes. I understand.

THE COURT: -- and that you're wanting to give them up to take advantage of the agreement that you negotiated with the State?

DEFENDANT: Yes. I understand that. Yes. (emphasis added).

The State then recited a factual basis for the offenses, and Defendant acknowledged the facts as true. At the end of the plea colloquy, the following dialogue took place:

THE COURT: Are you pleading guilty to these offenses because you are guilty?

DEFENDANT: Yes.

THE COURT: [Defendant], as to each of these files *I accept your plea*. I find that it is freely and voluntarily given made with full knowledge and understanding of the consequences. *As a result as to each of these charges and both of these cases, I find you guilty*.

I'm going to *accept the sentence conditioned upon you[r] report[ing] to the jail* before 4:00 p.m. on Friday. *I accidentally signed the first one, but I've not signed any of the rest of them, and I'm not going to sign them until I make sure that you turn yourself in*. So long as you carry out your part of the bargain, this will be the order of [t]he [c]ourt, and I've

announced those earlier on the record, as I perceive them. It is an effective seventeen year sentence to be served, and several thousand dollars in fines.

. . . .

I'm gonna withhold entry of these judgments until Friday. The jail credit that you are entitled to has been documented to the misdemeanor files, and that's from July 18th, 2016 through July 22nd of 2016.

. . . .

You are to report to the jail before 4:00 p.m. this Friday[,] September 30th[,] to begin serving your sentence. (emphasis added).

### *Failure to Appear and Issuance of Capias*

Defendant failed to report on Friday, September 30, 2016, and the trial court executed an Order to Issue Capias ("Capias") for the arrest of Defendant on a charge of failure to appear. The Capias was returned served on Defendant on January 15, 2017, and Defendant was arrested and booked into the Monroe County Jail.[2] On January 20, 2017, the trial court issued an Order for Pre-Sentence Report. Also on January 20, 2017, counsel for Defendant moved to withdraw from further representation.

### *Motion to Withdraw Guilty Plea*

On July 13, 2017, Defendant filed a pro se "Motion to Withdraw Guilty Plea Prior to Sentencing" (motion to withdraw guilty plea), claiming that his plea "was unlawfully entered through coercion and intimidation of being sentenced as a career offender and an imposition of a life sentence if convicted by a jury." On July 27, 2017, the State filed a Notice of Enhanced Punishment. On July 28, 2017, Defendant signed an Affidavit of Indigency, and the trial court appointed trial counsel to represent Defendant. On January 19, 2018, the State filed a response asking the court to dismiss Defendant's motion to withdraw guilty plea, claiming that:

> Defendant has waited almost a year to file his motion and the only reason he is filing this motion is because he chose not to turn himself in and serve his negotiated sentence. Defendant clearly admits his guilt at the plea

---

[2] The Capias was filed September 30, 2016. The officer's return, which shows that the Capias was executed by the arrest of Defendant on January 15, 2016, obviously has the wrong date. Based on other documents in the record, the return should have been dated January 15, 2017.

hearing. Defendant has had a significant history with the [c]riminal [j]ustice [s]ystem. Prejudice to the State would be significant.

### *Petition for Writ of Habeas Corpus*

On December 19, 2017, trial counsel filed a Petition for Writ of Habeas Corpus ("habeas petition") claiming that Defendant was illegally incarcerated in the Tennessee Department of Correction ("TDOC") on a seventeen-year sentence in Case No. 15340.[3] The habeas petition claimed that Defendant had "not been convicted of any crime that should necessitate further detention or incarceration of him" because "no judgments have been entered" in Case Nos. 15340 and 16177.

### *Order Granting Writ of Habeas Corpus*

On January 19, 2018, the trial court heard argument on the habeas petition. On February 5, 2018, the court entered an Order Granting Writ of Habeas Corpus and ordering Defendant to be returned forthwith to the Monroe County Jail to be held without bond. The February 5, 2018 order stated:

> The [c]ourt inquired why, or on what authority, [Defendant] was confined in [TDOC]. [Trial counsel] stated that he had tried to discover the authority but could get no answer from anyone. The [c]ourt instructed the State to investigate and announced that the Writ would be reviewed. Later that afternoon[,] the State reported that a judgment, signed by the [c]ourt September 26, 2016, had been sent to TDOC by the [j]ail and that confinement was based on that order. Immediately, the [c]ourt ruled that that judgment was void. A Writ of Habeas Corpus was authorized[,] and [trial counsel] was instructed to draft the order for signature by the [c]ourt.

### *Hearing on Motion to Withdraw Guilty Plea*

On February 12, 2018, the trial court heard argument on Defendant's motion to withdraw guilty plea. Rather than arguing the grounds raised in the motion to withdraw guilty plea, trial counsel instead argued that he "didn't think that he necessarily even needed to file a new or subsequent or amended motion to withdraw the plea, because it was [Defendant's] position that [the court] did not accept the plea of guilty." Trial counsel then quoted the court's warning to Defendant at the plea submission hearing:

---

[3] In the affidavit filed with the habeas petition, trial counsel stated that, after he was appointed and began investigating the case, he initially had trouble locating Defendant but ultimately discovered that Defendant was incarcerated in TDOC.

"But if you don't turn yourself in, then, I have not accepted this plea, and then there's not gonna be any negotiating for thirty-five percent on whatever. We're gonna actually have you plead, or go to trial as -- wherever the pieces fall."

The State, citing Tennessee Rule of Criminal Procedure 11(c), responded:

But [t]he [c]ourt must advise the Defendant if he rejects the plea agreement that [t]he [c]ourt doesn't -- that [t]he [c]ourt can decide whether to accept or reject the plea agreement or the disposition, which is different than the plea of guilt. In this particular case you did not accept that disposition, but you did accept the plea of guilt.

After argument, the court recounted the events of the September 26, 2016 plea submission hearing. In reference to the judgment of conviction that the judge mistakenly executed at the plea submission hearing, the court stated, "[H]ow that judgment ever got filed and how it ever got to [TDOC] is still unclear and unknown to me." The court said it went over each of the counts in the plea agreement with Defendant, established that there was a factual basis for the pleas, ensured that Defendant understood his rights, and ensured that Defendant was pleading guilty freely and voluntarily. The trial court then paraphrased a portion of the plea submission transcript:

[I]f you don't turn yourself in, this is what I'm going to do to protect myself: I'm not going to sign these judgments today; I'm going to wait until Friday[,] and I'm going to get confirmation from the jail. And if you turn yourself in, the sentence will go down effective that day. If you don't turn yourself in, then I have not accepted this plea.

The trial court agreed with trial counsel that "the word choice" of the court "about not accepting the plea" was not "as clear as it should have been." The court explained that when it said "plea" at the plea submission hearing, "I think I meant the full plea agreement, the disposition." The court then stated:

And so the language I chose to use could have been clearer, but I think the substance of what was discussed throughout the entire hearing was that if [Defendant] did not turn himself in on Friday as he promised he would, the [c]ourt could sentence him up to the maximum, which from this appears to be 30 years at 60 percent.

Turning to the merits of Defendant's pro se motion to withdraw the guilty plea, the trial court addressed the factors listed in *State v. David Jerome Powell*, No. W2015-00366-CCA-R3-CD, 2015 WL 7282747, at \*6 (Tenn. Crim. App. Nov. 18, 2015), in order to determine if there was any fair and just reason to allow Defendant to withdraw

his guilty plea. The court found that: (1) Defendant's pro se motion was filed ten months after he pled guilty, (2) that there had been no "valid reason" presented to the court for the delay, (3) that Defendant provided no proof that he was either coerced or intimidated into pleading guilty, and (4) that Defendant had prior experience with the criminal justice system.

The trial court orally denied the motion finding that "there has been insufficient proof. Quite frankly, no proof to show that the pleas were illegally entered" and that Defendant had failed to prove that there was any was any fair and just reason to allow Defendant to withdraw his guilty plea. The court then stated, "So if the pleas stand, [Defendant] has to be sentenced." The trial court set a sentencing hearing for May 14, 2018. On April 30, 2018, a written order denying Defendant's motion to withdraw guilty plea was entered nunc pro tunc for February 12, 2018.

### *Sentencing Hearing*

On May 14, 2018, the trial court conducted a sentencing hearing. Based on the testimony of witnesses and the presentence report, the court found Defendant to be a career offender for Counts 1, 2, and 3 of Case No. 15340. The trial court sentenced Defendant to thirty years in Count 1 (possession of over 0.5 grams cocaine for resale), six years in Count 2 (possession of more than one-half (1/2) ounce but less than ten pounds (10 lbs.) of marijuana for resale), and thirty years in Count 3 (possession of over 0.5 grams methamphetamine for resale). The trial court sentenced Defendant to eleven months and twenty-nine days in Count 4 (possession of drug paraphernalia). The court ordered the sentences in Case No. 15340 to run concurrently. In Case No. 16177, Counts 1 through 3, the trial court sentenced Defendant to concurrent terms of eleven months and twenty-nine days for simple possession of cocaine, simple possession of marijuana, and possession of drug paraphernalia. The court ordered the effective sentence of eleven months and twenty-nine days in Case No. 16177 to run consecutively to the effective thirty-year sentence in Case No. 15340. Judgments of conviction were entered for the first time in these two cases on May 14, 2018.

Defendant timely filed a Notice of Appeal.

### ANALYSIS

Defendant claims that the trial court erred by denying his motion to withdraw guilty plea before sentencing and, as a result, that he was denied a right to trial by jury. The State argues that "the trial court acted within its discretion in denying [D]efendant's motion to withdraw his guilty plea after finding that [D]efendant had failed to demonstrate any fair and just reason to withdraw his plea." We agree with the State

that Defendant failed to demonstrate any fair and just reason to withdraw his guilty plea. However, for reasons not argued by either party, we determine that the judgments of the trial court must be reversed and the case remanded.

**Withdrawal of Guilty Plea Before Sentencing**

A trial court's decision to deny a defendant's motion to withdraw his or her plea of guilty is reviewed by this court for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id.*

"A criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Id*. at 444 (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). Tennessee Rule of Criminal Procedure 32(f), which governs withdrawal of guilty pleas, provides:

> (1) Before Sentence Imposed. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.
>
> (2) After Sentence But Before Judgment Final. After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice

The Tennessee Rules of Criminal Procedure do not specify what constitutes a "fair and just reason." *State v. Patrick Maxwell*, No. E1999-00124-CCA-R3-CD, 2000 WL 1606582, at *8 (Tenn. Crim. App. Oct. 27, 2000). However, because a "fair and just reason" is a less demanding standard than "to correct manifest injustice," it should be easier to withdraw a guilty plea before a sentence is imposed than after. *See State v. Antonio Demonte Lyons*, No. 01C01-9508-CR-00263, 1997 WL 469501, at *6 (Tenn. Crim. App. Aug. 15, 1997). This court has utilized factors used by federal courts in a "'fair and just reason' analysis." *Patrick Maxwell*, 2000 WL 1606582, at *8; *Antonio Demonte Lyons*, 1997 WL 469501, at *12. In *Phelps*, our supreme court agreed with this court's decision that "the federal courts' non-exclusive multi-factor approach is the correct one for a trial court to follow in assessing whether to grant a pre-sentencing motion to withdraw a guilty plea." *Phelps*, 329 S.W.3d at 447. Those factors are:

> 1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;

2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;

3. Whether the defendant has asserted and maintained his innocence;

4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt;

5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

*Id.*

Defendant claimed that his plea "was unlawfully entered through coercion and intimidation of being sentenced as a career offender and an imposition of a life sentence if convicted by a jury." Advising Defendant of the possible maximum sentences he faced if convicted is not coercive. To the contrary, informing a defendant of the "maximum possible penalty and any mandatory minimum penalty" is one of the things that a trial court is required to do before accepting a guilty plea. Tenn. R. Crim. P. 11(b)(1)(B). In any event, there is no proof in the record, including the transcripts of the plea submission hearing, supporting Defendant's claim that he was coerced into pleading guilty.

At the hearing on Defendant's motion to withdraw guilty plea, the trial court found that: (1) Defendant's pro se motion was filed ten months after he pled guilty; (2) there had been no "valid reason" presented to the court for the delay; (3) Defendant provided no proof that he was either coerced or intimidated into pleading guilty; and (4) Defendant had prior experience with the criminal justice system. The court also found there was "no proof to show that the pleas were illegally entered" and denied Defendant's motion to set aside the guilty pleas. These findings are supported by the record. Defendant has failed to show any fair and just reason to justify withdrawal his guilty plea before he was sentenced. The court did not abuse its discretion in denying the motion to withdraw guilty plea.

### Guilty Pleas

Tennessee Rule of Criminal Procedure 11(a) governs pleas generally. Rule (11)(b), which governs acceptance and consideration of guilty pleas, requires the trial court to address a defendant personally in open court, inform the defendant concerning a wide range of rights, make sure the defendant understands those right, and ensure that

there is factual basis for the plea.  The purpose of Rule 11(b) is to ensure that the plea is being knowingly and voluntarily entered.  Rule 11(c), which governs plea agreement procedure, provides in pertinent part:

>  (1) In General. — The district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement.  The court shall not participate in these discussions.  If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, *the plea agreement may specify that the district attorney general will*:
>
>> (A) move for dismissal of other charges;
>>
>> (B) recommend, or agree not to oppose the defendant's request for, a particular sentence, with the understanding that such recommendation or request is not binding on the court; or
>>
>> (C) *agree that a specific sentence is the appropriate disposition of the case*.
>
> (2) Disclosing a Plea Agreement. —
>
>> (A) Open Court.  The parties shall disclose the plea agreement in open court on the record, unless the court for good cause allows the parties to disclose the plea agreement in camera.
>>
>> (B) Timing of Disclosure.  Except for good cause shown, the parties shall notify the court of a plea agreement at the arraignment or at such other time before trial as the court orders.
>
> (3) Judicial Consideration of a Plea Agreement. —
>
>> (A) Rule 11(c)(1)(A) or (C) Agreement. — *If the agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept or reject the agreement pursuant to Rule 11(c)(4) or (5),* or may defer its decision until it has had an opportunity to consider the presentence report.
>>
>> (B) Rule 11(c)(1)(B) Agreement. — If the agreement is of the type specified in Rule 11(c)(1)(B), the court shall advise the defendant

that the defendant has no right to withdraw the plea if the court does not accept the recommendation or request.

(4) Accepting a Plea Agreement. — If the court accepts the plea agreement, the court shall advise the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement.

(5) Rejecting a Plea Agreement. — *If the court rejects the plea agreement, the court shall* do the following on the record and in open court (or, for good cause, in camera):

> (A) advise the defendant personally that the court is not bound by the plea agreement;
>
> (B) *inform the parties that the court rejects the plea agreement and give the defendant an opportunity to withdraw the plea*; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than provided in the plea agreement.

Tenn. R. Crim. P. 11(c) (emphasis added).

The Advisory Commission Comment to Tennessee Rule of Criminal Procedure 11 states, in relevant part, the following about the types of Rule 11(c)(1) plea agreements:

The type of plea agreements have greatly expanded in recent years because judges now impose non-capital sentences. Consequently, it is important for the lawyers to have a clear understanding as to those aspects of the agreement which are plea contingent and those that are not. The defendant must also have an understanding so that the plea is knowing.

A simple example should illustrate the type of contingent and noncontingent agreements contemplated. The [S]tate may agree that in exchange for a plea to burglary[,] the [S]tate will recommend four years and that at the time of the sentencing hearing the [S]tate will recommend probation[,] but the latter is a nonbinding recommendation. Two separate agreements have thus been made. The first, the four years, is a (c)(1)(C) agreement. The defendant's plea is wholly contingent on getting exactly four years. The sentence is not binding on the court but the alternative to rejection of the sentence agreement is a potential withdrawal of the plea.

The second agreement, the recommendation of probation, is, under this example, a (c)(1)(B) agreement. The plea is contingent only on the [S]tate's recommendation of probation and not on probation actually being granted. If the court denies probation[,] the defendant cannot withdraw the plea.

Tenn. R. Crim. P. 11(c), Advisory Comm'n Cmts.

This court has recently stated that Rule 11(c)(1):

contemplates guilty pleas of three types: pleas that are contingent on the dismissal of other charges ("Type A" pleas), pleas that are contingent on the prosecutor's nonbinding recommendation of a sentence to the court ("Type B" pleas), and pleas that are contingent on a specific sentence ("Type C" pleas).

*State v. Chastity Coleman*, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *10 (Tenn. Crim. App. Apr. 6, 2018), *no perm. app. filed*.

Based on the record in this case, we determine that, in exchange for Defendant's plea of guilty to the seven offenses listed in the plea agreement, the State agreed that a specific sentence—seventeen years as a Range II offender—was the appropriate disposition of the case. Therefore, this was a Rule 11(c)(3)(C) type of plea, or, using the language of *Chastity Coleman,* this was "Type C" plea that was "contingent on a specific sentence." *Chastity Coleman*, 2018 WL 1684365, at *10. Although the trial court could "defer its decision until it has had an opportunity to consider the presentence report," the court ultimately had to either accept the guilty plea pursuant to Rule 11(c)(4) or reject the plea agreement pursuant to Rule 11(c)(5). Tenn. R. Crim. P. 11(c)(3)(A).

Although the trial court warned Defendant that it could or would reject the plea agreement if Defendant failed to report to jail as agreed, we determine that the trial court did not actually reject the plea agreement until the sentencing hearing when it sentenced Defendant to a sentence different from the "specific sentence" that the State and defendant agreed was the "appropriate disposition of the case." Tenn. R. Crim. P. 11(c)(1)(3). When the court rejected Rule 11(c)(1)(3) type agreement plea agreement, it was required pursuant to Rule 11(c)(5) to do three things on the record in open court or in camera:

(A) advise the defendant personally that the court is not bound by the plea agreement;

- 14 -

(B) inform the parties that the court rejects the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than provided in the plea agreement.

Tenn. R. Crim. P. 11(c)(5); *see* also *Goosby v. State*, 917 S.W.2d 700, 706 (Tenn. Crim. App. 1995) ("If . . . the court rejects the terms of a 'binding plea' pursuant to (e)(1)(A) or (C), then the defendant may withdraw the guilty plea since the plea is conditioned upon a specific result.").

The trial court properly accepted Defendant's guilty plea, and the court had the authority to reject the Rule 11(c)(1)(C) plea agreement. However, when a court rejects a Rule 11(c)(1)(C) plea agreement, it must comply with the mandates of Rule 11(c)(5), including giving the defendant an opportunity to withdraw the plea. The court failed to comply with Rule 11(c)(5).

## CONCLUSION

The judgments of the trial court are reversed, and the case is remanded for a hearing in which the trial court may, in its discretion, either reject or accept the Rule 11(c)(1)(C) plea agreement. If the trial court rejects the plea agreement, it must "advise [D]efendant that the court is not bound by the plea agreement," "inform the parties that the court rejects the plea agreement," "give [D]efendant an opportunity to withdraw the plea," and "advise [D]efendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the [D]efendant than provided in the plea agreement." *See* Tenn. R. Crim. P. 11(c)(5). If the trial court rejects the plea agreement and Defendant withdraws his guilty plea, Defendant will have the right to a trial by jury. If the trial court accepts the plea agreement, it must sentence Defendant pursuant to the terms of the plea agreement. *See* Tenn. R. Crim. P. 11(c)(4).

_____
ROBERT L. HOLLOWAY, JR., JUDGE