FILED

09/04/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2020

**STATE OF TENNESSEE v. NATHAN LAMAR SWANSON, JR.**

**Appeal from the Criminal Court for Knox County
Nos. 112774, 112775, 112880       G. Scott Green, Judge**

**No. E2019-00830-CCA-R3-CD**

The Appellant, Nathan Lamar Swanson, Jr., pled guilty to attempted possession of a firearm by a felon, aggravated kidnapping, aggravated assault, and possession of a Schedule IV controlled substance with the intent to sell. The Appellant was given a total effective sentence of fourteen years as a Range I offender. The Appellant subsequently filed a pro se motion seeking to withdraw his guilty plea. Upon being appointed counsel, the Appellant filed an amended motion seeking to withdraw his guilty plea, alleging that trial counsel failed to adequately investigate the charges and to advise the Appellant as to a viable defense, resulting in an unknowing, involuntary plea. The trial court denied relief, and the Appellant appeals. Following our review, we affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gerald L. Gulley, Jr. (on appeal), and Leslie Jeffress (at hearing), Knoxville, Tennessee, for the appellant, Nathan Lamar Swanson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Charme P. Allen, District Attorney General; and Deborah Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
On April 10, 2018, the Appellant was indicted for two counts of unlawful possession of a firearm having been convicted of a felony, and one count each of simple possession of a controlled substance, driving a vehicle with a suspended license, failure to provide evidence of financial responsibility while driving a car, and driving a car without a brake

light.  See Tenn. Code Ann. §§ 39-17-418, 39-17-1307, 55-9-402, 55-12-139, 55-50-504. On the same day, the Appellant was indicted for two counts of unlawful possession of a firearm having been convicted of a felony, one count each of especially aggravated kidnapping, aggravated assault, domestic assault, and theft of property valued at $1,000 or less.  See Tenn. Code Ann. §§ 39-13-102, 39-13-111, 39-13-305, 39-14-103, 39-17-1307. Two weeks later, on April 24, 2018, the Appellant was indicted for alternative counts of possession with intent to sell a Schedule IV controlled substance and possession with the intent to deliver a controlled substance.  See Tenn. Code Ann. § 39-17-417.

On August 16, 2018, the Appellant pled guilty to attempted possession of a firearm by a felon, aggravated kidnapping, aggravated assault, and possession of a Schedule IV controlled substance with the intent to sell.  The Appellant was subjected to a lengthy and detailed plea hearing, during which the State read the following stipulated facts:

> The testimony would be that on October 22, 2017, [the Appellant] and his girlfriend, [the victim], had gotten into an argument because she did not have her identification, so they were not allowed entry into a club in the Old City.
>
> When they returned to her apartment, [the Appellant] became angry, yelled at [the victim], "You don't know how to shut up," and [the Appellant] head-butted [the victim].  [The victim] then attempted to run to the neighbors to call an ambulance [because] she couldn't see, but [the Appellant] chased her down, grabbed her by the arm and started kicking and hitting her.  [The Appellant] then drug her back into the apartment.
>
> Once [the victim] was in the apartment, [the Appellant] jumped on top of her and held her down while hitting her all over her body with different objects, including an ashtray.  When [the Appellant] stopped hitting her, he went outside to his vehicle, at which time, [the victim] retrieved [her handgun] in order to protect herself.  When [the Appellant] came back in the apartment, he took the firearm from her and he began beating her with [the gun].
>
> [The victim] did suffer multiple injuries that resulted in her admission to the hospital.  She had a collapsed lung and multiple broken ribs.
>
> [Testimony] from [Knoxville Police Department] Officer Adam Broome [would be] that [he] was attempting to serve the warrants [for the above charges] on October 25, 2017, at Davenport Road.

-2-

While serving [the Appellant], [officers] took him into custody, did a search incident to arrest, discovered a clear plastic baggie containing 17 green, rectangular pills with the mark SD3, identified as Alprazolam, 2 milligrams, in his front right pocket. [The Appellant] also had $1,110 in U.S. currency, in denominations consistent with the sale of narcotics.

[The Appellant] admitted to Investigator Broome that he did not have prescriptions for the Alprazolam. The packaging and cash were consistent with possession with intent to sell or deliver.

[O]fficers with the Knox County Sheriff's Office, [were] behind [the Appellant when] they noticed he was driving a vehicle with a brake light out. A check through Knox County revealed that [the Appellant] was operating a vehicle on a suspended license. [The Appellant] was also unable to provide insurance. [A] K9 partner, Zack, [sniffed] around the vehicle. The K9 did alert on the vehicle. Search incident to that alert located a black Beretta .22-caliber handgun, with one round in the chamber and five rounds in the magazine underneath the driver's seat. [The Appellant] was the only occupant of that vehicle. [Law enforcement] also found marijuana in the vehicle.

The court informed the Appellant of the various punishment ranges he could have been subjected to if he would have continued to trial and been convicted of the original charges. Additionally, the court informed the Appellant of the effects of his guilty plea, including credit for time served, percentage to be served before release eligibility, and information concerning parole. The court continued with great detail informing the Appellant of his right to a jury trial and confirmed that the Appellant's plea was knowing and voluntary and the decision was solely his to make. The Appellant received an effective agreed-upon sentence of fourteen years as a Range I offender.

On August 27, 2018, the Appellant filed a pro se motion to withdraw his plea and subsequently, on March 26, 2019, appointed counsel filed an amended motion which also included a claim of ineffective assistance of counsel as a basis to withdraw his guilty plea. The Appellant's motion to withdraw hearing was held on April 11, 2018.

The Appellant testified that he pled guilty because he "was scared to be prosecuted for a crime that [he] didn't commit." The Appellant asserted that his trial counsel "pretty much said" that if he did not take the plea deal that was offered, "the [district attorney] would refer [his] case to the feds, pretty much guaranteeing" that he would be sentenced to fifteen years or more in federal prison. As part of the plea agreement, the Appellant did receive a release from federal prosecution.

The Appellant testified that trial counsel informed him that not all of his charges would be tried at the same time. The Appellant asserted that trial counsel told him that "if [he] was prosecuted for the state [charges, his] maximum amount of time could be up to forty-one years" and that his federal charges "could've been fifteen or more, which would've guaranteed [him] pretty much life in prison." Trial counsel had also informed the Appellant that there was a possibility that his charges could be sentenced consecutively.

The Appellant testified that in preparation for trial, counsel never gave him a "straight answer as far as how or what" sort of defenses would be presented. The Appellant asserted that he was not guilty of the felon in possession of a firearm offense because he did not know the gun was in his car on the night he was arrested; his father had left the gun in the car on a previous occasion, according to the Appellant. The Appellant told trial counsel that he believed the gun to be his father's, and trial counsel "said that she would speak with [his father] when she had a chance." The Appellant did not know if trial counsel ever spoke with his father.

The Appellant testified that he received police reports, a medical report concerning the victim, and the victim's statements as discovery in his case. Trial counsel informed the Appellant that further discovery existed on discs, but the Appellant asserted he was never able to view this discovery.

The Appellant believed trial counsel met with him twice to discuss the Appellant's case. During the first meeting, trial counsel did not discuss any defenses that may have been used in the Appellant's case. The two discussed the assault, the kidnapping, and details of who owned the car. Additionally, during this meeting, the Appellant informed trial counsel that at the time of the incident, he had sustained hand injuries that "could possibly [have proven] that [he] was unable to commit the said acts of the crime that [he] was charged with." The Appellant explained that he had "a fractured left hand and [] a fractured bone and a broken bone in [his] right hand." His right hand was in a cast at that time. The Appellant asked trial counsel to "get those reports from the hospital" as evidence of his hand injuries. The Appellant did not believe trial counsel obtained those reports.

The Appellant denied kidnapping or assaulting the victim. The Appellant had explained to trial counsel that while he and the victim were arguing, the victim jumped on his back and "was trying to strike" him with a liquor bottle. The Appellant grabbed the victim with his left hand and "was trying to pretty much shake her off of [him]." The Appellant testified that he "fell on top of [the victim]" and that because of the size difference, an injury may have resulted to the victim.

During the second meeting with trial counsel, the Appellant was shown some black and white photographs that were "hard for [him] to really be able to see anything." Trial counsel stated that she would show him better images on a disc. The Appellant received the police reports and hospital records at this meeting. The Appellant asserted that he informed trial counsel that he wanted to go to trial.

The Appellant testified that he had actually met with trial counsel a third time to discuss a plea offer from the State. At this meeting, trial counsel told the Appellant that the plea offer "was something that [he] should really think about." The Appellant asserted that he told trial counsel that he was "not comfortable with taking a plea deal." The Appellant was "afraid of not taking the plea deal after the information that [trial counsel] had given [him]" regarding the state and federal charges. The Appellant asserted that he could have been found not guilty of those charges he pled guilty to.

On cross-examination, the Appellant agreed that his case was set for trial on August 20, 2018, four days after he pled guilty, and that he had the opportunity to proceed if he desired. The Appellant testified that he signed a waiver of rights and had reviewed the waiver in-depth with the trial court on the day of his plea hearing. The Appellant agreed that he indicated at the hearing that he understood his waiver of rights, that he was guilty of all the charges, and that he was satisfied with counsel on the day of the plea hearing. The Appellant also agreed that he had heard the State's stipulated proof at his hearing. The Appellant was aware that he had been permitted to plead to the lesser-included offense of attempted possession of a firearm by a convicted felon and that the court could have sentenced him consecutively.

The Appellant identified a document that trial counsel had prepared showing each charge against the Appellant, the possible sentencing range for each charge, and the declination to prosecute from the federal government. The Appellant acknowledged that trial counsel had reviewed this document with him and that the Appellant understood the information. The Appellant denied telling trial counsel that he would accept a plea offer for fourteen years, instead, the Appellant averred that he told counsel he would "rather it be less [than fifteen years and] more specifically towards [] ten [years]." Nonetheless, the Appellant agreed that he owned the marijuana found in the car, that he had possession of sixteen Alprazolam pills without a prescription, and that he was carrying $1,100 in cash upon his arrest.

Trial counsel testified that she was appointed to represent the Appellant at the time of his arraignment. Soon after being appointed, trial counsel met with the Appellant to discuss his charges and asked the court for a furlough so that the Appellant could attend a funeral. Trial counsel obtained discovery from the State and shared the information with the Appellant. Trial counsel could not recall if she brought her laptop to view the discovery

-5-

contained on discs, but she "thought [she] brought [it] at least once[.]" Additionally, she described all of the discovery to the Appellant.

Trial counsel discussed plea negotiations with the Appellant and believed the Appellant's case "was a little bit trickier than normal because [the Appellant was] also charged in Hamblen County on an aggravated child abuse case . . . [so these charges were] mandatory consecutive to the Hamblen case." Trial counsel received an initial offer of eighteen years from the State, but she was instead able to negotiate a ten-year sentence to be served at one-hundred percent and a five-year sentence to be served at thirty percent, for an effective sentence of fifteen years.

Upon speaking to the Appellant about the fifteen-year offer, the Appellant told trial counsel that if a fourteen-year offer was made, he would accept. Trial counsel was able to negotiate a fourteen-year sentence if the Appellant agreed to a plea hearing the following day.

Trial counsel had spoken with the Appellant's mother and his "father said the gun was his, and was willing to come and testify[.]" However, trial counsel explained that the State's plea offer was "a global offer" and it "was all or nothing." The Appellant accepted the plea offer, and trial counsel testified that the Appellant did not indicate that he wanted to go to trial at that time.

On cross-examination, trial counsel asserted that she met with the Appellant "more than three" times. According to trial counsel, she and the Appellant "had talked about possibilities going forward on defenses [to the Appellant's charges]." Trial counsel testified that the defense against the Appellant's aggravated kidnapping charge would be "to call [the victim's] credibility into question when she testified." However, trial counsel had concerns with the Appellant's taking the stand "given his criminal history." Trial counsel had consulted with the Appellant regarding the victim's credibility and her presentation to a jury, and the Appellant thought it was "likely that [the victim] would [have been] believed [by the jury]."

Trial counsel recommended that the Appellant take the fourteen-year offer due to a multitude of factors including the Appellant's opinion that the victim would seem credible to a jury, the victim's connections to federal law enforcement, and the Appellant's Hamblen County aggravated child abuse case. Trial counsel testified that she would have been prepared to go to trial.

The trial court filed an order on April 25, 2019, wherein it found that the Appellant did not prove a manifest injustice occurred when he pled guilty. The court found that at no time during his plea hearing did the Appellant express a desire to go to trial nor did he

-6-

express dissatisfaction with trial counsel. Additionally, the court found that the stipulated proof offered by the State was compelling. The court denied the Appellant's petition for relief. This timely appeal followed.

## ANALYSIS

The Appellant contends that the trial court erred by denying him relief, arguing that his guilty plea should be withdrawn due to trial counsel's ineffective investigation of the charges and failure to properly advise the Appellant as to his likelihood of success at trial and, as a result, his plea was not knowing or voluntary. He argues that a manifest injustice occurred as a result of counsel's ineffective assistance. The State responds that relief was properly denied because the court credited trial counsel's testimony that the Appellant did not express the desire to go to trial, that trial counsel had discussed the Appellant's possible defenses in preparation of trial, and that she had informed the Appellant of discovery she had received.

Generally, a defendant who submits a guilty plea is not entitled to withdraw the plea as a matter of right. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The decision to allow the withdrawal of a guilty plea is within the discretion of the trial court and may not be overturned on appeal absent an abuse of discretion. Henning v. State, 201 S.W.2d 669, 670 (Tenn. 1947); State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). Although not explicitly listed in our Rules of Appellate Procedure as an appeal as of right provided under Tennessee Rule of Appellate Procedure 3, our supreme court has held that a defendant may appeal the denial of a motion to withdraw a guilty plea. See State v. Peele, 58 S.W.3d 701, 703 (Tenn. 2001) (holding that a direct appeal lies from the denial of a Rule 32(f) motion under Tennessee Rules of Criminal Procedure).

Rule 32(f) of the Tennessee Rules of Criminal Procedure governs the withdrawal of a guilty plea prior to the judgment becoming final. According to the rule, a trial court may permit the withdrawal of a guilty plea upon a showing "of any fair and just reason" before it sentences the defendant. Tenn. R. Crim. P. 32(f)(1). Once the defendant is sentenced and before the judgment becomes final, however, a trial court may permit the withdrawal of a guilty plea only "to correct manifest injustice." Id. 32(f)(2).

Trial courts and appellate courts must determine whether manifest injustice exists on a case-by-case basis. See State v. Crowe, 168 S.W.3d 731, 741-42 (Tenn. 2005); Turner, 919 S.W.2d at 355. To determine whether the defendant should be permitted to withdraw his guilty plea to correct manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates

an inquiry into the existence of manifest injustice. See generally State v. McClintock, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea. State v. Thomas Lester Campbell, No. E2008-02751-CCA-R3-CD, 2009 WL 2567872, at *5-6 (Tenn. Crim. App. Aug. 20, 2009).

In addressing manifest injustice, "a Defendant's change of heart about pleading guilty" will not support the withdrawal of a guilty plea on this basis. State v. Phelps, 329 S.W.3d 436, 445 (Tenn. 2010) (quoting State v. Crowe, 168 S.W.3d 731 (Tenn. 2005)). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Wade v. State, W2017-01042-CCA-R3-PC, 2019 WL 259118, at *3 (Tenn. Crim. App. Jan. 17, 2019).

In its order, the trial court denied the Appellant's motion to withdraw his guilty plea, as a manifest injustice had not occurred and a correction was not needed. The court specifically referenced that at the Appellant's plea hearing, the court spent an "inordinate amount of time" and went into "much greater detail than the law requires" when it accepted the Appellant's guilty plea. Additionally, during this hearing, "at no point did [the Appellant] express his dissatisfaction with his attorney, nor a desire to go to trial." The court credited trial counsel's testimony that the Appellant did not "express[] a desire to go to trial." Moreover, the court found that the "evidence of the [Appellant's] guilt in each case [was] compelling" when referencing the State's stipulated proof at the plea hearing. The court found that the Appellant "faced significantly more exposure had he gone to trial(s) and been convicted within each of these cases." The court found that the Appellant entered his plea consciously, knowingly, and voluntarily.

At the hearing to withdraw the plea based upon ineffective assistance of counsel, trial counsel testified that the Appellant did not indicate that he wanted to go to trial after accepting the fourteen-year plea agreement. Trial counsel testified that the Appellant believed that the victim would seem credible to a jury and that trial counsel had concerns with the Appellant's testimony based upon the Appellant's previous criminal history. Although trial counsel could not recall specifically taking her laptop to show the Appellant the discovery that was contained on discs, she did provide him with paper copies of available discovery and described all other discovery to him. During multiple meetings, she discussed defenses to the Appellant's charges, including a strategy to attack the victim's credibility and to argue that the Appellant did not know his father's gun was in his

-8-

car. She asserted that she would have been prepared for trial but for the Appellant's acceptance of a plea agreement.

The Appellant testified that he had signed the plea agreement and that he had stated in court he did so consciously, knowingly, and voluntarily. Additionally, the Appellant acknowledged that he did not testify at his plea hearing that he wanted to go to trial nor that he was dissatisfied with counsel.

We conclude that the trial court did not abuse its discretion by finding that the Appellant had not proven that a manifest injustice occurred. The court found that the Appellant was incredible and credited trial counsel's testimony that she adequately investigated the Appellant's charges and was prepared for trial. The Appellant has failed to establish that a manifest injustice occurred. Accordingly, we do not find any merit in the Appellant's ineffective assistance claim. The court properly denied the Appellant's motion.

## CONCLUSION

Based upon the foregoing, the judgment of the court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE